Lynette **VAZQUEZ GONZALEZ**,
Plaintiff,

v.

**K–MART CORPORATION**, Defendant.

Civil No. 95–1891 (HL).

United States District Court,
D. Puerto Rico.

Sept. 27, 1996.

Peter John Porrata, Hato Rey, PR, for plaintiff.

Ernesto Lebron–Gonzalez, Mercado & Soto, Old San Juan, PR, for defendant.

## OPINION AND ORDER

LAFFITTE, District Judge.

Before the Court is Defendant's motion for summary judgment on the grounds that Plaintiff (1) has failed to establish a prima facie case of discrimination on the basis of her pregnancy and (2) has failed to produce evidence of Defendant's discriminatory animus. Plaintiff filed an opposition to the motion relying on a Rule 56(f) extension of time to conduct discovery and one isolated remark allegedly made by Plaintiff's supervisor when Plaintiff informed him that she was pregnant. For the reasons explained below, the Court concludes that Plaintiff has failed to demonstrate that Defendant's proffered justification for her dismissal was pretextual and motivated by discrimination and, therefore, grants Defendant's motion for summary judgment.

## STANDARD OF REVIEW

The Court shall grant a motion for summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no *genuine* issue as to any *material* fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c) (emphasis added). Facts which affect the outcome of the dispute are material. "Factual disputes that are irrelevant or unnecessary will not be counted." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). In determining if a material fact is "genuine," the Court does not weigh the facts but, instead, ascertains whether "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.; Leary v. Dalton,* 58 F.3d 748, 751 (1st Cir.1995).

Significantly, the moving party bears the initial responsibility of "pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case." *Celotex Corp. v. Catrett,* 477 U.S. 317, 325, 106 S.Ct. 2548, 2554, 91 L.Ed.2d 265 (1986). The movant must establish that it is entitled to a judgment as a matter of law. *See Stepanischen v. Merchants Despatch Transp. Corp.,* 722 F.2d 922, 928 (1st Cir. 1983).

Once this threshold is met, the burden shifts to the nonmoving party. The nonmovant may not rest on mere conclusory allegations or wholesale denials. *Libertad v. Welch,* 53 F.3d 428, 435 (1st Cir.1995). It also must "set forth specific facts showing that there is a genuine issue for trial." Fed. R.Civ.P. 56(e); Local Rule 312.11. Not all factual disputes will defeat a motion for summary judgment. "If the evidence is merely colorable or is not significantly probative, summary judgment may be granted." *Anderson,* 477 U.S. at 249–250, 106 S.Ct. at 2511. Moreover, a trivial "scintilla of evidence" will not save the nonmovant's case from collapsing. *Id.* at 252, 106 S.Ct. at 2512. The evidence must be precise and competent. *Libertad,* 53 F.3d at 435. The nonmovant "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986).

■ Certainly, the Court construes all material facts and reasonable inferences drawn therefrom in favor of the nonmoving party. *Leary,* 58 F.3d at 751 (1986). However, even in discrimination cases, summary judgment is appropriate where the nonmoving party rests entirely upon "conclusory allegations, improbable inferences, and unsupported speculation" on any essential element of the discrimination claim. *Medina–Munoz v. R.J. Reynolds Tobacco Co.,* 896 F.2d 5, 8 (1st Cir.1990).

■ If necessary, as a last resort, the nonmoving litigant may invoke Rule 56(f) and request an extension of time to gather evidence to oppose the summary judgment motion. Before the Court grants such an extension, the nonmoving party's request must

meet five requirements: (1) *authoritative-ness* i.e. an attorney under pain of Rule 11 sanctions or a party must submit the request; (2) *timeliness* i.e. the request should be made within a reasonable time following the summary judgment motion; (3) *good cause* i.e. the party must demonstrate good cause for failing to conduct the discovery previously; (4) *utility* i.e. there must be a plausible basis to believe that discoverable materials exist that would likely raise a genuine issue of material fact; and (5) *materiality* i.e. the requested discovery materials must be material to the legal dispute at the heart of the summary judgment motion. *Resolution Trust Corp. v. North Bridge Assoc., Inc.,* 22 F.3d 1198, 1203 (1st Cir.1994).

Courts should generally grant Rule 56(f) requests unless the party has been dilatory in conducting discovery or the motion is really a wolf draped in sheep's clothing to delay the litigation in the case. *Id.; see also Ayala–Gerena v. Bristol Myers–Squibb Co.,* 95 F.3d 86, 92–94 (1st Cir.1996) (affirming district court's denial of a Rule 56(f) request because the party failed to exercise due diligence during discovery). A Rule 56(f) request, however, can not save a nonmovant from losing the motion if there is no genuine issue of material fact in dispute and the moving party is entitled to judgment as a matter of law. In such cases, the request only forestalls the inevitable dismissal of the complaint.

## FACTS

Construing Plaintiff's allegations and all reasonable inferences drawn therefrom in her favor, the record shows that on April 25, 1990 Plaintiff, Lynette Vazquez Gonzalez ("Vazquez"), began working as a part-time employee for Defendant, K–Mart Corporation, as a floor clothing merchandiser in Caguas. Initially, Vazquez earned $3.45 per hour. By 1994, Vazquez was earning $4.45 per hour because K–Mart increased her salary in small timely increments. While Vazquez was working at the Caguas store, one of K–Mart's employees who subsequently transferred to the El Señorial K–Mart store, Roberto Arana, observed Vazquez' work and considered her an "above average employee." Pls.' Opp'n Mot., Dkt. No. 18, Ex. II at ¶ 4.

In the Fall of 1994, Arana began to recruit Vazquez to the El Señorial store. Arana offered Vazquez a new position as the Jewelry Manager with a concomitant increase in salary and benefits. Tempted by the new title and the additional money, Vazquez accepted Arana's offer and began working for the El Señorial store on Monday September 19, 1994. Within three days, Vazquez complained about the job. Because she lives near Caguas, Vazquez had to fight the traffic congestion before and after work. The additional stress of arriving to work every day in traffic was especially difficult for Vazquez because she was pregnant and frequently experienced terrible morning sickness. Moreover, her new job impeded her from arriving to her classes at a local university on time. Arana attempted to accommodate Vazquez by permitting her to arrive at 7:00 A.M. and leave at 4:00 P.M. Moreover, Arana allowed Vazquez to take Saturdays and Sundays off.

In spite of these beneficial changes, Vazquez was still perturbed by the traffic and its effect on her pregnancy. As a result, on September 21, 1994, she approached Arana about transferring back to her prior position in the Caguas store. Vazquez informed Arana that she was not comfortable traveling from her home near Caguas to the El Señorial store. She told Arana: "[L]ook, I don't feel well and I am pregnant, and I have some symptoms. I don't feel well, and the trip is being somewhat difficult for me. I have terrible morning sickness, very terrible morning sickness." Pls. Opp'n Mot., Dkt. No. 18, Ex. 3 at 8.

Arana's reaction to Vazquez' transfer request was inconsiderate and, yet at the same time, he was agreeable to her transfer. According to Vazquez, Arana said that she was "in trouble" and "screwed." Whether Arana meant that she was in trouble because she was requesting a transfer within three days of beginning a new job, or that she was in trouble because she was complaining about the difficulty of the traffic, or that she was in trouble because she was pregnant is, at best, ambiguous. What is clear is that Arana

agreed to the transfer. He asked her, however, to stay for at least one week to permit him time to find a replacement.

Approximately one week later, on Thursday September 29, 1994, Vazquez spoke with a supervisor of K–Mart's Caguas store, Gina Jiménez. Jiménez offered Vazquez a part-time position which would begin after Arana found a replacement for her and eventually lead to a more significant, full-time responsibility. Vazquez immediately jumped at the chance to leave El Señorial and accepted the offer. When Arana learned about Jiménez' offer on Friday September 30, 1994, he simply stated that such an offer did not exist and questioned whether Jiménez could make that kind of offer. Vazquez believes that Arana was doing everything he possibly could to keep her from leaving El Señorial.[1]

On Wednesday, October 5, 1994, Vazquez arrived at the El Señorial store and announced that it was her last day of work there. She said that she was moving on to begin her new job at the Caguas store. Arana, apparently disturbed by her transfer before he had an opportunity to find a replacement and hoping that she would stay at his store, threatened to fire her if she left. He told Vazquez repeatedly "I am going to fire you." Vazquez disregarded Arana's threats and, instead of showing up for work at the El Señorial store, arrived the very next day at the Caguas store. Jiménez, unprepared for Vazquez' arrival, told Vazquez to return on Monday, October 10, 1994.

Arana never knew that Vazquez arrived to work at the Caguas store. Arana only knew that Vazquez, in spite of his warnings, failed to report to work on Thursday October 6, 1994, Friday October 7, 1994, and Monday October 10, 1994. When Vazquez arrived at the Caguas store on Monday, she was immediately sent to the El Señorial store to visit

Arana. As she entered the store with her husband, Arana approached her and told her that she was fired in a loud voice that many of the customers overheard. Arana shouted "you are fired, and that is all. And in fact, you are fired from all the stores. And I talked to all the different stores and nobody is going to hire you." Pls. Opp'n Mot., Dkt. No. 18, Ex. 3 at 21.

On that same day, Arana filed a K–Mart Separation Report. Def. Mot. Summary Judgment, Dkt. No. 13, at Ex. 11. In that report, Arana explained that he was terminating Vazquez' employment because she abandoned her job on October 6, 1994 and never returned without notifying any employee of El Señorial. In spite of firing her for abandoning her job, Arana still recommended that K–Mart re-employ her in the future. Arana never altered his belief that Vazquez was a productive employee for K–Mart.

Vazquez then returned to the Caguas store. Jiménez, however, sent her back to El Señorial to speak with Wendy Baerga. When Vazquez explained why she was fired, Baerga offered her initially a night-time temporary position at El Señorial. Baerga then called Arana into the meeting and, apparently, the offer was withdrawn because "they said that they couldn't trust [her] anymore." Pls. Opp'n Mot., Dkt. No. 18, Ex. 3 at 22.

Undoubtedly, Vazquez believes that her decision to transfer from the Caguas K–Mart store to the El Señorial K–Mart store was a mistake. Not only did the job and the accompanying traffic aggravate her pregnancy and her efforts to attend classes at a local university, Vazquez never received all of her expected financial benefits from the transfer. She never received the expected increase in her pay check for the short time that she was

---

1. Vazquez makes no reference whatsoever in her motion to several allegations that she made in her complaint. For example, in her complaint Vazquez alleges that Arana granted her request to leave work and visit a doctor because of her pregnancy on October 3, 1994. Pls.' Compl., Dkt. No. 1, at ¶ 12. She also alleges that the doctor warned her not to continue working under strenuous conditions which could affect her health and the well-being of her baby. *Id.* at ¶ 13. Finally, she states that she informed Arana

about the doctor's report and reminded him of her desire to leave El Señorial. *Id.* at ¶ 14. Because Vazquez can not rely on mere allegations in her complaint without any evidentiary support, the Court shall not consider these asservations when ruling upon K–Mart's motion. *See LeBlanc v. Great American Ins. Co.,* 6 F.3d 836, 841 (1st Cir.1993), *cert. denied,* —— U.S. ——, 114 S.Ct. 1398, 128 L.Ed.2d 72 (1994) (nonmoving party may not rest on mere allegations in pleadings).

working at El Señorial. Moreover, Arana apparently promised her without any authority that she would not have to pass a three month probationary period before receiving the new salary increase and marginal benefits. In the end, the transfer and Vazquez' falling out with Arana left her without a position at K–Mart.

## PROCEDURAL HISTORY AND THE RULE 56(F) REQUEST

On July 17, 1995, Vazquez filed a complaint against K–Mart Corporation for the alleged discrimination she suffered because of her pregnancy in violation of Title VII, 42 U.S.C.A. § 2000e–2 (1994). Vazquez also alleged that Arana's actions violated Puerto Rico's Civil Code because they constituted sex discrimination, violated her constitutional right of privacy, violated her employment contract, and constituted a tort. On September 21, 1995, after K–Mart answered the complaint, the Court issued a Scheduling Order setting (a) the discovery deadline for April 15, 1996, (b) the dispositive motion deadline for May 3, 1996, and (c) the jury trial date for October 14, 1996. Dkt. No. 7. At K–Mart's request, the Court subsequently extended the deadline for discovery to June 5, 1996 and the dispositive motion deadline to June 17, 1996. Dkt. No. 11.

On June 18, 1996, K–Mart filed its motion for partial summary judgment. Dkt. No. 13. The Court permitted K–Mart to file the motion one day beyond the deadline and granted Vazquez until July 8, 1996 to file an opposition. Dkt. No. 14. Approximately five days later, Vazquez requested a 45 day extension of time to file an opposition because of her attorney's "heavy work load." Dkt. No. 15. Vazquez made no mention of any discovery problems in that motion or any other prior motion. Because the Court had already permitted Vazquez additional time to file her opposition, the Court denied her request. Dkt. No. 16. Shortly thereafter, Vazquez filed a Rule 56(f) request for an extension of time on the grounds that K–Mart failed to file timely answers to her first set of interrogatories and request for the production of documents. Dkt. No. 17. Vazquez served K–Mart with the interrogatories and production of documents request

*sixty-three days* before the discovery deadline. On July 9, 1996, some three months after Vazquez requested the discovery information, K–Mart delivered answers to her requests.

Rather than wait for the Court's decision on her Rule 56(f) request, Vazquez filed an opposition to K–Mart's motion for summary judgment one-day after the deadline. Dkt. No. 18. In her opposition, Vazquez emphasized her need for additional discovery to oppose K–Mart's motion. Vazquez asserted that she was unable to depose any K–Mart employees such as Roberto Arana because of K–Mart's failure to timely respond to her discovery requests. Pls. Opp'n Mot., Dkt. No. 18, at 4 & 10. She admitted that she was unable to demonstrate a prima facie case of pregnancy discrimination because she did not have the information to show that K–Mart continued to have her duties performed by a comparably qualified person. *Id.* at 6.

Three days after Vazquez filed her opposition motion renewing her Rule 56(f) request, the Court granted Vazquez' original "Motion Requesting Reconsideration of the Order Not Granting Extension of Time to Oppose Request for Summary Judgment Under Rule 56(f)." Dkt. No. 19. The Court granted Vazquez until July 26, 1996 to garner any further evidence necessary to defeat K–Mart's motion. *Id.*

Vazquez never took advantage of this Rule 56(f) extension of time. She never supplemented her motion opposing summary judgment and relied completely on her original motion and its accompanying exhibits. From the Record, it is unclear whether Vazquez ever attempted to depose the key players in this case including Roberto Arana and Gina Jiménez. What is abundantly pellucid, however, is that Vazquez may not rely on Rule 56(f) now to defeat K–Mart's motion or to delay the Court's ruling on K–Mart's motion. Rule 56(f) and *North Bridge Associates* entitled Vazquez to one extension of time under Rule 56(f). The rule does not allow a second extension of time particularly when the nonmoving litigant has given no indication that she took advantage of the first extension of time or provided any justification for an additional delay. Consequently,

the Court hereby denies Vazquez' Rule 56(f) request in her motion opposing summary judgment to the extent that this request differs from Vazquez' initial Rule 56(f) motion. The Court shall proceed to rule on the merits of K–Mart's motion.

## THE MERITS

Vazquez is proceeding with her claim under a disparate treatment theory. She alleges that K–Mart discriminated against her intentionally because of her pregnancy. Because she lacks any direct evidence of intentional discrimination, both Vazquez and K–Mart agree that the Supreme Court's *McDonnell Douglas* burden switching framework is applicable in this case. *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 802, 93 S.Ct. 1817, 1824, 36 L.Ed.2d 668 (1973); *Smith v. F.W. Morse & Co., Inc.,* 76 F.3d 413, 421 (1st Cir.1996).

Under the *McDonnell Douglas* framework, Vazquez bears the initial burden of establishing a prima facie case of discrimination on the basis of her pregnancy. The elements of the prima facie case are analogous to four links in a chain. Should Vazquez fail to present sufficient proof of any one link, the connection between her pregnancy and her dismissal is broken, and her case must be dismissed accordingly. Vazquez must demonstrate that (1) she is a member of a protected class of persons, (2) she was adequately performing her job and was not dismissed because of a poor job performance, (3) she suffered an adverse employment action, and (4) another employee with similar qualifications continued to perform her duties. *Id.* at 420–421. Normally, this burden is " 'not onerous' " and, in fact, very easy to meet. *Smith v. Stratus Computer, Inc.,* 40 F.3d 11, 15 n. 4 (1st Cir.1994), *cert. denied,* —— U.S. ——, 115 S.Ct. 1958, 131 L.Ed.2d 850 (1995) (quoting authority omitted).

It is not immediately apparent that Vazquez has met this burden. Certainly, Vazquez has provided sufficient proof that she is a member of a protected class, she was adequately performing her job and was not dismissed because of a poor job performance, and she suffered from an adverse employment decision. The Pregnancy Discrimina-

tion Act of 1978 amended Title VII to protect women from discrimination on the basis of childbirth, pregnancy, and related medical conditions. 42 U.S.C.A. § 2000e(k) (1994). A pregnant woman like Vazquez, therefore, is a member of a protected class.

Moreover, Vazquez has presented sufficient evidence to support a reasonable inference that she was adequately performing her job at the time of her dismissal. Undoubtedly, K–Mart strongly contests this claim. K–Mart maintains that it dismissed Vazquez because she abandoned her job for three days without notifying any K–Mart official. Arana's sworn affidavit and separation report support K–Mart's contention. Unfortunately for K–Mart, however, "particularly in a discharge case—where an employee has been doing the job satisfactorily for a substantial period of time—the proponent's burden is not great." *Cumpiano v. Banco Santander Puerto Rico,* 902 F.2d 148, 154 (1st Cir.1990). Her testimony that she was adequately performing her job and that she never abandoned her position but followed Jiménez' instructions to appear at the Caguas store is sufficient to create an inference that she was performing her job well. Arana's recommendation that K–Mart rehire Vazquez after her dismissal is further proof that her job performance was adequate at the time of her exit.

■ Since there is no dispute that Vazquez suffered from an adverse employment action, the weak link in Vazquez' prima facie case is the fourth and final element. Vazquez, in fact, concedes that she has not offered any evidence that another K–Mart employee with similar qualifications continued to perform Vazquez' duties as the Jewelry Manager. Pls. Opp'n Mot., Dkt. No. 18, at 6 ("[P]laintiff has not been able to prove it due to defendant's failure to comply with plaintiff's discovery request.") Despite this concession, Vazquez has presented sufficient evidence to satisfy this fourth element without even knowing it. The mere search for a replacement with similar qualifications satisfies this fourth link. *Cumpiano,* 902 F.2d at 154. Vazquez' deposition testimony and Arana's sworn affidavit show conclusively that K–Mart began looking for a replacement for Vazquez as soon as she vocalized her desire

to transfer back to the Caguas store. Consequently, Vazquez has presented sufficient proof of all four links in a prima facie case of sex discrimination.

▮ Vazquez' proof raises a rebuttable presumption that K–Mart discriminated against her because of her pregnancy. Under *McDonnell Douglas,* the burden of proof now shifts to K–Mart to establish a legitimate, non-discriminatory rationale for Vazquez' dismissal. This is a "modest hurdle" that K–Mart leaps over with considerable ease. *Smith,* 76 F.3d at 421. Through Vazquez' deposition testimony, Arana's sworn affidavit, and Arana's separation report, K–Mart has come forward with a legitimate, non-discriminatory reason for her discharge. K–Mart maintains that it dismissed Vazquez for abandoning her Jewelry Manager position at the El Señorial. This justification is clear and reasonably specific. In Vazquez' deposition testimony, she admitted that she never appeared at the El Señorial store on the sixth, the seventh, and the tenth of October in spite of Arana's warnings. In Arana's sworn affidavit, he asserts that Jiménez never offered Vazquez a position at the Caguas store and that she abandoned her position on these three days without written or verbal warning. Finally, Arana's separation report which he filed on the same day that K–Mart dismissed Vazquez states that Vazquez had abandoned her position without prior notice.[2]

All of this evidence rebuts effectively Vazquez' prima facie case of discrimination and shifts the ultimate burden of proof to Vazquez. Vazquez must prove that K–Mart's proffered explanation for her dismissal is actually a pretext disguising the intentional discrimination. *Smith,* 76 F.3d at 421. It is not enough for Vazquez to prove that K–Mart's justification is pretextual. Vazquez must also prove that her dismissal was moti-

vated by discrimination. *St. Mary's Honor Center v. Hicks,* 509 U.S. 502, 515–17, 113 S.Ct. 2742, 2752, 125 L.Ed.2d 407 (1993).

▮ Vazquez relies on one isolated, ambiguous remark to prove that K–Mart's proffered explanation is pretextual and that her dismissal was motivated by discrimination. The First Circuit Court of Appeals, however, has held that isolated, ambiguous statements are not sufficiently probative of discriminatory animus. *Lehman v. Prudential Ins. Co. of America,* 74 F.3d 323, 329 (1st Cir.1996) (analyzing an age discrimination under Massachusetts' less burdensome test for discrimination than the *McDonnell Douglas* framework); *see also Phelps v. Yale Security, Inc.,* 986 F.2d 1020, 1026 (6th Cir.), *cert. denied,* 510 U.S. 861, 114 S.Ct. 175, 126 L.Ed.2d 135 (1993) (the factory manager's comments that plaintiff was too old to be a secretary and that her fifty-fifth birthday was a cause for concern were isolated, ambiguous remarks insufficient to support a finding of age discrimination); *Shenker v. Lockheed Sanders, Inc.,* 919 F.Supp. 55, 60–61 (D.Mass.1996) (supervisor's remarks that plaintiff could handle a layoff better than other employees because he was older and that management should not feel attached to older employees were insufficient to warrant a finding of age discrimination); *Nakai v. Wickes Lumber Co.,* 906 F.Supp. 698, 705 (D.Me.1995) (supervisor's remark that plaintiff was at a "crossroads" was so ambiguous that it provided little if any probative value of age discrimination); *cf. Ayala–Gerena v. Bristol Myers–Squibb Co.,* 95 F.3d 86, 96 (1st Cir.1996) (direct evidence of discrimination "does not include stray remarks in the workplace, particularly those made by nondecisionmakers or statements by decisionmakers unrelated to the decisional process itself.")

Vazquez' proof of discriminatory animus rests entirely upon the comment that Arana

---

2. Vazquez argues that K–Mart has failed to present sufficient evidence of the non-discriminatory rationale for her dismissal. She asserts that K–Mart may not rely legitimately upon the sworn testimony of Roberto Arana, the alleged discriminatory actor. Vazquez overlooks, however, that the ultimate burden of proof rests upon her. Under the *McDonnell Douglas* framework, K–Mart does not need to prove by a preponderance

of the evidence that it discharged her for abandoning her position. *Texas Dep't of Community Affairs v. Burdine,* 450 U.S. 248, 255–57, 101 S.Ct. 1089, 1094–96, 67 L.Ed.2d 207 (1981). Instead, K–Mart "need only produce admissible evidence which would allow the trier of fact rationally to conclude that the employment decision had not been motivated by discriminatory animus." *Id.* at 257, 101 S.Ct. at 1096.

made when she informed him that she was pregnant and wished to return to the Caguas store. Although Arana agreed to permit the transfer, he stated that she was "in trouble" and she was "screwed." According to Vazquez, this was Arana's only comment regarding her pregnancy. It was clearly an isolated remark.

From Vazquez' deposition, it is unclear whether Arana made this comment referring to her pregnancy, or to her decision to leave El Señorial after three days, or to her desire to return to the Caguas store. When the Court evaluates the comment in light of Arana's attempts to keep Vazquez at the El Señorial store, it becomes even more ambiguous. Throughout her deposition, Vazquez asserts that Arana did not want her to transfer to Caguas. He wanted her to remain the Jewelry Manager for, at the very least, the near future. After she complained about the traffic and the interference with her classes at a local university, Arana altered her schedule to accommodate her needs. He denied her request to transfer immediately to the Caguas store and asked Vazquez to remain until he could find a replacement. When he finally issued the separation report and discharged Vazquez for abandoning her position, he recommended that K–Mart rehire her in a future position. Arana never changed his mind that Vazquez, pregnant or not pregnant, was a valuable K–Mart employee.

Vazquez argues that she is not relying on "conclusory allegations, improbable inferences, and unsupported speculation." Pls. Opp'n Mot., Dkt. No. 18, at 9–10. However, her reliance upon Arana's isolated, ambiguous comment flies in the face of this argument. Vazquez speculates that Arana's comment was related to her pregnancy and motivated by discrimination. She never presents any evidence, however, to support her interpretation. Given Arana's attempts to keep Vazquez employed at his store, Vazquez also relies on the improbable inference that Arana discriminated against her intentionally because of her pregnancy.

 The First Circuit has aptly stated in many discrimination cases what the Court suspects here: Vazquez' "claims of discrimination based on ... [her pregnancy] are but mere 'unsupported conclusions' ... [which plausibly] ... sprout[ed] as easily as crabgrass in an imaginative litigant's (or lawyer's) 'word processor.' " *Ayala–Gerena,* 95 F.3d at 98 (quoting authority omitted). As a matter of law, one isolated, ambiguous remark by itself is insufficient to support a claim of discrimination under Title VII. Consequently, the Court hereby grants K–Mart's motion for summary judgment. Vazquez' Title VII claim is hereby dismissed with prejudice. Pursuant to 28 U.S.C. § 1367(c) (1996) and *United Mine Workers of America v. Gibbs,* 383 U.S. 715, 725, 86 S.Ct. 1130, 1138, 16 L.Ed.2d 218 (1966), the Court declines to exercise pendent jurisdiction over Vazquez' remaining claims under Puerto Rico law. Her claims under Puerto Rico's Civil Code and Constitution are hereby dismissed without prejudice. Judgment shall be entered accordingly.

## CONCLUSION

Plaintiff has failed to overcome her burden of demonstrating that Defendant's proffered explanation for her dismissal was both pretextual and motivated by discrimination. Her reliance upon her supervisor's isolated, ambiguous remark is insufficient, as a matter of law, to warrant a finding of discrimination on the basis of her pregnancy. Therefore, the Court hereby **grants** K–Mart's motion for summary judgment. Plaintiff's Title VII claim is hereby dismissed with prejudice. Plaintiff's remaining claims under Puerto Rico law are hereby dismissed without prejudice. Judgment shall be entered accordingly.

**IT IS SO ORDERED.**