98 F.3d 670
 72 Fair Empl.Prac.Cas. (BNA) 406,
69 Empl. Prac. Dec. P 44,437
Gilberto MULERO-RODRGUEZ, Gladys Ortiz-Margarys,
Plaintiffs-Appellants,
v.
PONTE, INC. and Haydee Sabines, Widow of Ponte, Defendants-Appellees.
 No. 95-1877.
 United States Court of Appeals,
First Circuit.
 Heard Feb. 27, 1996.
Decided Oct. 28, 1996.
 
 Kevin G. Little, Fresno, CA, with whom David Efrn and Law Offices David Efrn, Rio Piedras, PR, were on brief, for appellants.
 Jay A. Garca-Gregory, with whom Juan C. Guzman-Rodrguez and Fiddler Gonzalez & Rodrguez, San Juan, PR, were on brief, for appellees.
 Before TORRUELLA, Chief Judge, COFFIN, Senior Circuit Judge, and CYR, Circuit Judge.
 TORRUELLA, Chief Judge.
 
 
 1
 Appellants-Plaintiffs Gilberto Mulero-Rodrguez ("Mulero") and his spouse, Gladys Ortiz-Margarys, appeal the district court's grant of summary judgment to defendants Ponte, Inc. and Haydee Sabines ("Sabines") in this wrongful termination case for their suit under the Age Discrimination in Employment Act (the "ADEA"), 29 U.S.C. § 626(c), and Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, et seq. The Muleros also presented claims under Puerto Rico Law 100, 29 L.P.R.A. § 185(a), Law 80, 29 L.P.R.A. § 146, and the Puerto Rico Civil Code for breach of contract and tortious conduct provisions. For the reasons stated herein, we affirm in part and reverse in part.
 
 BACKGROUND
 
 2
 As always, in reviewing the district court's grant of summary judgment, we present the facts, drawn here from the district court opinion and order, see Mulero Rodriguez v. Ponte, Inc., 891 F.Supp. 680, 682-83 (D.P.R.1995), in the light most favorable to the nonmovant, see, e.g., Woodman v. Haemonetics Corp., 51 F.3d 1087, 1089 n. 1 (1st Cir.1995). Appellee Ponte, Inc. is a corporation whose principal place of business is in Puerto Rico and is incorporated there. It is owned by members of two families of Cuban descent, the Pontes and the Sabines. Appellant Mulero worked for Ponte, Inc. for 29 years, starting as a driver and eventually attaining the positions of general manager and director. By January of 1993, he bore substantial responsibility for the day-to-day operations of Ponte, Inc., and received compensation of some $150,000 per year.
 
 
 3
 Mara Luisa Ponte ("Ponte"), one of the owners and officers of Ponte, Inc., began to work at the company in late 1991. She soon moved to restrict Mulero's authority, limiting his ability to hire and fire employees by requiring her approval for personnel actions. During the course of 1992, Ponte and Mulero clashed over a series of issues, relating to Mulero's job performance, employee bonuses, control over inventory, and Mulero's interaction with other employees. Mulero's employment was terminated on January 26, 1993, by Sabines and her son-in-law Jorge Redondo ("Redondo"), who was not a Ponte, Inc., employee. Mulero was 47 years old. The appellants sued, alleging discrimination under the ADEA and Title VII, and the district court granted summary judgment for Ponte, Inc., and Sabines. This appeal followed.
 
 DISCUSSION
 A. Title VII and ADEA Claims
 
 4
 In the summary judgment context, we review the district court's grant of summary judgment de novo, and "are obliged to review the record in the light most favorable to the nonmoving party, and to draw all reasonable inferences in the nonmoving party's favor." LeBlanc v. Great American Ins. Co., 6 F.3d 836, 841 (1st Cir.1993), cert. denied, 511 U.S. 1018, 114 S.Ct. 1398, 128 L.Ed.2d 72 (1994); see, e.g., Woods v. Friction Materials, Inc., 30 F.3d 255, 259 (1st Cir.1994). "An inference is reasonable only if it can be drawn from the evidence without resort to speculation." Frieze v. Boatmen's Bank of Belton, 950 F.2d 538, 541 (8th Cir.1991).
 
 
 5
 We will uphold summary judgment where "the pleadings, depositions, answers to the interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). We are not restricted to the scope of the district court's logic, but can affirm on "any independently sufficient ground." Mesnick v. General Elec. Co., 950 F.2d 816, 822 (1st Cir.1991), cert. denied, 504 U.S. 985, 112 S.Ct. 2965, 119 L.Ed.2d 586 (1992). Of course,
 
 
 6
 [n]ot every factual controversy bars a litigant's access to the Rule 56 anodyne:
 
 
 7
 [T]he mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact.
 
 
 8
 Medina-Munoz v. R.J. Reynolds Tobacco Co., 896 F.2d 5, 8 (1st Cir.1990) (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986)). The nonmovant bears the burden of setting forth "specific facts showing that there is a genuine issue for trial." Fed.R.Civ.P. 56(e). An issue is genuine if it "must be decided at trial because the evidence, viewed in the light most flattering to the nonmovant, would permit a rational factfinder to resolve the issue in favor of either party." Medina-Munoz, 896 F.2d at 8 (citation omitted).
 
 
 9
 In the absence of direct evidence of discrimination, we apply the familiar burden-shifting framework of McDonnell Douglas Corp. v. Green, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973), to ADEA and Title VII claims. See Ayala-Gerena v. Bristol Myers-Squibb Co., 95 F.3d 86, 96 (1st Cir.1996) (noting that "direct evidence does not include stray remarks in the workplace"); see, e.g., Pages-Cahue v. Iberia Lneas Aereas de Espana, 82 F.3d 533, 536-37 (1st Cir.1996); Woods, 30 F.3d at 259. First, the plaintiffs must establish a prima facie case that Mulero (1) was within a protected class; (2) met Ponte, Inc.'s legitimate performance expectations; (3) was adversely affected; and (4) was replaced by another with similar skills and qualifications. See Smith v. Stratus Computer, Inc., 40 F.3d 11, 15 (1st Cir.1994), cert. denied, --- U.S. ----, 115 S.Ct. 1958, 131 L.Ed.2d 850 (1995); Vega v. Kodak Caribbean, Ltd., 3 F.3d 476, 479 (1st Cir.1993). Once they do so, the burden shifts to Ponte, Inc., to produce a valid and nondiscriminatory reason for the dismissal. In the final stage, the burden shifts back to the plaintiffs to show that Ponte, Inc.'s stated reason for Mulero's dismissal was false and but a pretext for discrimination. See, e.g., Woods, 30 F.3d at 260; Medina-Munoz, 896 F.2d at 8. In this summary judgment context, plaintiffs, as the nonmovants, must show evidence sufficient for a factfinder to reasonably conclude that Ponte, Inc.'s decision to terminate was driven by a discriminatory animus. See LeBlanc, 6 F.3d at 843. "Thus, a district court's grant of summary judgment to an employer will be upheld if the record is devoid of adequate direct or circumstantial evidence of the employer's discriminatory intent." Pages-Cahue, 82 F.3d at 537.
 
 1. The Prima Facie Case
 
 10
 The parties agree that only the second element of the prima facie case, i.e., that Mulero met Ponte, Inc.'s legitimate job expectations, is in dispute. Finding little support in the depositions cited, and noting that the record did not include affirmative evidence of satisfactory performance, such as evaluations or appraisals, the district court nonetheless assumed that the plaintiffs satisfied the second element, on the basis of Mulero's long history at Ponte, Inc. We take the district court's reasoning a step further and find that plaintiffs did, indeed, fulfill the second element.
 
 
 11
 Mulero was at Ponte, Inc., for almost thirty years. During that time, he rose from being a driver to holding the posts of general manager and director, with the attendant promotions and pay raises. We have previously found that such evidence supports an inference that an employee's job performance was adequate to meet an employer's needs, even when the evidence did not extend all the way to the time of the discharge. See Keisling v. SER-Jobs for Progress, Inc., 19 F.3d 755, 760 (1st Cir.1994); see also Woodman, 51 F.3d at 1092; Stratus Computer, 40 F.3d at 15 n. 4; Woods, 30 F.3d at 261. We do so again here, and so find that plaintiffs established their prima facie case.2. Ponte, Inc.'s Reason for Dismissal
 
 
 12
 The parties do not contest that defendants have articulated a non-discriminatory reason for Mulero's discharge, namely, that he "made poor hiring decisions; argued repeatedly with, threatened and vandalized the automobile belonging to, the company's accountant, Luis Caceiro [ ("Caceiro") ]; inadequately controlled inventory; permitted his children inappropriate access to the company's resources; and misallocated bonus payments." Mulero Rodrguez, 891 F.Supp. at 685. We therefore turn to the final step of the McDonnell Douglas framework.
 
 3. Pretext for Discrimination
 
 13
 In their effort to demonstrate that Ponte, Inc.'s stated reason for Mulero's dismissal was a pretext for discrimination, the plaintiffs weave a tale of discriminatory comments, pretextual business decisions, and favoritism. Finding little substance in the story, the district court held that the plaintiffs did not meet their burden of demonstrating pretext and unlawful animus, in either the ADEA or the Title VII claim. We now weigh the evidence for each in turn, "focus[ing] on the ultimate question, [and] scrapping the burden-shifting framework in favor of considering the evidence as a whole." Mesnick, 950 F.2d at 827. Like the district court, we find that much of the Muleros' evidence merely "reflects the existence of differences of opinion between Mulero and others at the company with respect to a wide variety of issues affecting the company." Mulero Rodrguez, 891 F.Supp. at 686. However, because we find more content in the plaintiffs' case than did the district court, our review of the record leads us to conclude that, taking all inferences in their favor, the Muleros have offered sufficient evidence to fulfill the third McDonnell Douglas requirement and survive summary judgment. Accordingly, we reverse the district court's grant of summary judgment on their Title VII and ADEA claims.
 
 
 14
 a. The National Origin Discrimination Claim
 
 
 15
 The plaintiffs contend that Mulero was discriminated against because he is Puerto Rican, and the owners of Ponte, Inc., were Cuban and preferred to have a Cuban employee. As noted above, at this stage of our analysis, the Muleros "must introduce sufficient evidence to support two findings: (1) that the employer's articulated reason for laying off the plaintiff is a pretext, and (2) that the true reason is discriminatory." Udo v. Tomes, 54 F.3d 9, 13 (1st Cir.1995). The Muleros rely upon one set of evidence to establish both findings. See Woodman, 51 F.3d at 1092 (noting that a plaintiff may rely on the same evidence for both findings); see also Udo, 54 F.3d at 13.
 
 
 16
 We turn first to the question of pretext. The defendants spell out a series of reasons for Mulero's dismissal, listed above. In weighing whether the Muleros have presented enough evidence for a reasonable factfinder to deem the cited reasons pretextual, we remember that the issue is not whether Ponte, Inc.'s reasons to fire Mulero were real, but merely whether the decisionmakers--Sabines and Ponte--believed them to be real. See Woodman, 51 F.3d at 1093. As the district court noted, the defendants support their reasons with substantial deposition testimony and sworn statements. The Muleros counter with evidence challenging the veracity of many of the underlying reasons, but with little evidence that Sabines and Ponte did not actually believe them. Nonetheless, our review of the record leads us to conclude that the Muleros have indeed produced evidence sufficient for a reasonable factfinder to find Ponte, Inc.'s cited reasons pretextual.
 
 
 17
 First, defendants present evidence that complaints made by Ponte, Inc., salesmen over a shortage of inventory acted as the "catalyst" for the decision to terminate Mulero. They argue that Ponte and Sabines met with the complaining salesmen in late 1992, because the salesmen were concerned about a shortage in the inventory and its impact on their clients and commissions. Mulero still had the responsibility for buying the inventory. Defendants present deposition testimony of Sabines and Ponte about the meeting, as well as sworn statements by two of the salesmen. Defendants further attest that they brought up the complaints with Mulero, and that the complaints "were the straws that broke the camel's back." Appellants' Brief at 12.
 
 
 18
 However, the Muleros have offered evidence that the complaints were false. Mulero's deposition testimony states that in fact a shortage of inventory was a regular occurrence at the end of every calendar year, because the company ceased purchasing between December 1 and January 15 so that inventory could be taken. Although he testified that in 1992 he discussed with Sabines that he was behind in taking the inventory, he also testified that it was in fact finished in time and that he had no recollection of Sabines or Ponte--or the salesmen--complaining about a shortage of inventory. The Muleros also point out that, although they requested them, Ponte, Inc., has produced no business records in any way reflecting a shortage or lost sales or income based thereon. In sum, giving credence to Mulero's testimony, a rational factfinder could find that there was in fact no shortage of inventory beyond the standard end-of-year freeze on purchases. This casts doubt on whether Ponte and Sabines actually believed the complaints, and whether they could have served as the catalyst for Mulero's dismissal. The conclusion is not an inevitable one, but as the issues centering on the salesmen's complaints involve real issues of fact, it should be left to the factfinders.
 
 
 19
 Second, according to Ponte's testimony, the salesmen also complained that when they asked for merchandise Mulero would tell them to go ask Sabines or Ponte. The defendants argue that they found this attitude to be problematic, as Mulero still had buying and selling authority. Mulero testified, however, that if he ever said that, it was because he was no longer in charge of the salesmen. Clearly, an issue of fact exists as to whether the salesmen's complaints on this point are a real reason for Mulero's dismissal, as it is unresolved what the scope of his responsibility was.
 
 
 20
 Finally, Ponte attests that she started working at the company because of complaints about Mulero's conduct made to her mother, Sabines. Mulero, however, testified that Ponte told him she was starting work at Ponte, Inc., "in order to relieve [him] of some work." Mulero Deposition, at 102. At the same time, although he said they were not needed, she hired labor lawyers. While this is hardly condemning evidence, the reasonable factfinder could see Ponte's dissimulation regarding her motives for becoming active in the company and her contemporaneous hiring of attorneys as further reason to disbelieve the defendants' proffered reasons for firing Mulero. Cf. Sinai v. New England Telephone and Telegraph Co., 3 F.3d 471, 474 (1st Cir.1993) (noting that fact that employer "advanced different reasons for refusing to hire appellant at different times could have led the jury simply to disbelieve" the employer).
 
 
 21
 Having determined that the Muleros have marshalled enough evidence regarding pretext to defeat summary judgment on that point, we turn to the question of whether they can show that the real reason was national origin discrimination. The key evidence in the plaintiffs' argument that Mulero was discriminated against because he is Puerto Rican is his testimony that Luis Caceiro repeatedly commented to Mulero that Mulero was the only Puerto Rican running a Cuban company. Acknowledging that "[h]ad the comment ... been attributable to the defendants, it might have sufficed to satisfy the low threshold required to escape dismissal at this stage," Mulero Rodrguez, 891 F.Supp. at 685, the district court dismissed the evidence of Caceiro's comment and granted the defendants summary judgment. The court found that Mulero had not offered sufficient evidence to show that Caceiro was in any way a decision-maker--or influenced the decision-makers--regarding Mulero's dismissal. See Medina- Munoz, 896 F.2d at 10 ("The biases of one who neither makes nor influences the challenged personnel decision are not probative in an employment discrimination case."); see also Woods, 30 F.3d at 258. The district court also noted that, although not determinative, it "need not ignore" the absence of any evidence that defendants were aware of his Puerto Rican birth and heritage during his lengthy career at Ponte, Inc.
 
 
 22
 Review of the record in the light most favorable to the Muleros, however, leads us to conclude that a reasonable factfinder could in fact reasonably infer that Caceiro was in a position to influence Ponte, Inc.'s decision-making. Ponte took away Mulero's authority over the salesmen, giving the responsibility to Caceiro. She also shifted Mulero's inventory duties to Caceiro, proposing to computerize the inventory system. When she changed the bonus system, Caceiro's bonus was increased. According to Mulero, Ponte trusted Caceiro's word over Mulero's. Finally, as the district court noted, Ponte "learned from Caceiro about Caceiro's conflicts with Mulero." Mulero Rodrguez, 891 F.Supp. at 685. Given the favor with which Caceiro was treated and the responsibilities given him, on this record Caceiro may reasonably be thought to have been in a position to influence Ponte's decision-making. While this is not the inevitable conclusion, it is a reasonable one. Accordingly, a reasonable jury could infer that, based on Caceiro's comments that Mulero was the only Puerto Rican running a Cuban company, national origin animus played a role in the decision to terminate Mulero's employment, and so the district court erred in granting summary judgment on the Muleros' Title VII claim.[1]
 
 
 23
 b. The Age Discrimination Claim
 
 
 24
 The district court found the record insufficient to demonstrate genuine issues of material fact regarding whether Mulero's discharge was due to age-based animus. It focused on a comment Ponte made to Mulero in April of 1992, some eight months before his discharge, that he was "too old to handle" the salespeople, and so was to be relieved of his supervisory duties over the sales force. The court found that this statement was followed by no additional evidence of age-related bias, and that, standing alone, it was too remote in time for a sufficient nexus to exist between it and the decision to terminate Mulero. We review the record de novo. As we have already found that the Muleros have produced enough evidence to support a finding of pretext, we turn directly to the question of whether they can show that the real reason was age discrimination.
 
 
 25
 There is no question that statements like Ponte's, when made by a decision-maker, can be evidence of age discrimination. See, e.g., Mesnick, 950 F.2d at 824; Olivera v. Nestle Puerto Rico, 922 F.2d 43, 49 (1st Cir.1990). Granted, Ponte made the comment in relation to Mulero's ability to handle the salesmen, but "an employer's willingness to consider impermissible factors such as ... age ... while engaging in one set of presumably neutral employment decisions ... might tend to support an inference that such impermissible considerations may have entered into another area of ostensibly neutral employment decisions--here, an employee's termination." Conway v. Electro Switch Corp., 825 F.2d 593, 597-98 (1st Cir.1987).
 
 
 26
 However, we agree with the district court that, standing alone, it is too remote in time to be linked with the decision to terminate Mulero. See Birkbeck v. Marvel Lighting Corp., 30 F.3d 507, 512 (4th Cir.1994) (finding that discriminatory comment made over two years prior to discharge was not evidence of age discrimination); Phelps v. Yale Security, Inc., 986 F.2d 1020, 1026 (6th Cir.) (holding that statements made almost a year before layoff were too far removed to have influenced decision), cert. denied, 510 U.S. 861, 114 S.Ct. 175, 126 L.Ed.2d 135 (1993); see also Cooley v. Carmike Cinemas, Inc., 25 F.3d 1325, 1330 (6th Cir.1994) (listing timing of remarks as factor in whether they evidenced discrimination); Frieze v. Boatmen's Bank of Belton, 950 F.2d 538, 541 (8th Cir.1991). Indeed, "[t]he fact that [Ponte] made such a statement on only one occasion further supports this conclusion." Birkbeck, 30 F.3d at 512.
 
 
 27
 If, however, the Muleros have offered evidence to establish the needed nexus between Ponte's statement and the decision to fire Mulero, the statement may become pivotal. Unlike the district court, we find such a nexus in the record. Specifically, at the time she made the "too old" comment and altered Mulero's supervisory duties, Ponte instituted other changes, including the method by which bonuses were apportioned. In the past, bonuses had been awarded in April on a seniority basis; she switched to a merit-based system. Ponte testified that she changed the system for two reasons. First, she wanted to provide an incentive to new employees. Second, she felt that the old employees gave all their loyalty to Mulero, and that they knew that no matter what they did, they would still get a good bonus. Thus the change was designed to change their work habits and "attitude problems." Ponte Deposition, at 61. Under the new system, Mulero's bonus was decreased--Ponte testified that she did not believe Mulero deserved the bonus he had previously been receiving--while those of several newer employees, including the younger Caceiro, were increased.
 
 
 28
 The policy change regarding the bonus system can be viewed in several ways. First, the change in the system was a business decision--which we will not normally second-guess. See LeBlanc, 6 F.3d at 845. That does not mean we must ignore its existence, however. Cf. Sinai, 3 F.3d at 474 (finding that the multiple reasons employer advanced for its failure to hire appellant, including policy against hiring spouses of current employees, meant that jury could easily have found the reasons were pretextual). Second, although the change reduced Mulero's bonus, it did not change his base salary. At the same time, the bonus was part of Mulero's expected compensation. Finally, the old bonus system was based on seniority, not age--but in Mulero's case, seniority could serve as a proxy for his age. In sum, the evidence regarding the bonus system is anything but conclusive: it can be viewed as a reasonable measure in the face of a perceived problem, or as a method used to strip away part of Mulero's compensation and hurt those employees loyal to him--those who had been there the longest. Thus it is prime fodder for a jury.
 
 
 29
 It also serves Mulero's purpose here. Ponte's "too old" comment is strong evidence. The Muleros have found the needed nexus between it and Mulero's dismissal in the bonus change, and in this context we find the combination of Ponte's "too old" comment with the change in the bonus system disfavoring long-term--and therefore often older--employees troubling. Thus we think there is a material issue as to whether Ponte, Inc.'s real reason for firing Mulero was rooted in discriminatory animus. Cf. Conway, 825 F.2d at 598 (holding that statement made eight months before employee was dismissed and one made at least ten months before were not too remote from the dismissal and, thus, properly admitted at trial as evidence of a discriminatory atmosphere where he who made the first statement may have participated in the decision to fire her and the other refused to block her termination).
 
 
 30
 Of course, the full presentation of evidence on both sides might alter this judgment and show that the plaintiffs fell just short and would be subject to a directed verdict. But at the summary judgment stage, with the obligation to draw all reasonable inferences in favor of the party opposing summary judgment, we think that this case could not be dismissed against [the] defendants.
 
 
 31
 Rubinovitz v. Rogato, 60 F.3d 906, 912 (1st Cir.1995). Accordingly, and with a nod to the premise that "determinations of motive and intent, particularly in discrimination cases, are questions better suited for the jury," Petitti v. New England Tel. & Tel. Co., 909 F.2d 28, 34 (1st Cir.1990), we reverse the district court's grant of summary judgment on the Muleros' ADEA claim.
 
 
 32
 A final note. Without pointing to a specific example, the Muleros argue that the district court misapplied the summary judgment standard by founding its grant of summary judgment upon its acceptance of the defendants' testimonial evidence as "substantial," see Mulero Rodrguez, 891 F.Supp. at 685, and its rejection of contrasting testimony. See LeBlanc, 6 F.3d at 836 (noting that, in summary judgment, reviewing court must view record and draw all reasonable inferences in nonmovant's favor). We disagree. First, the district court's comment was made regarding the defendants' rebuttal in the second step of the McDonnell Douglas framework, and was merely describing the strength with which the defendants supported their asserted reasons. See Mulero Rodrguez, 891 F.Supp. at 685 ("Defendants, now tossed the ball, run quite a distance with it."). Second, although we reverse the court below, we find no misapplication of the summary judgment standard in this difficult case. Indeed, we remind appellants that "the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." See Anderson, 477 U.S. at 247-48, 106 S.Ct. at 2510.
 
 
 33
 In making their allegation, the Muleros contend that the district court should not have credited Sabines' and Ponte's testimony because of their invocation of the privilege against self-incrimination. The defendants retort that this issue was not raised below, and so, as this is not an exceptional case requiring a deviation from the norm, the Muleros are precluded from raising it here. See Villafane-Neriz v. FDIC, 75 F.3d 727, 734 (1st Cir.1996). Even if the argument were raised below, however, the defendants' invocation of the privilege is largely irrelevant here. The Muleros' argument goes to credibility, and it is well established that the nonmovants are entitled to all reasonable inferences in a summary judgment case, whether or not the moving party invoked their privilege. At the same time, the Muleros misapprehend the nature of the case law they cite: "the Fifth Amendment does not forbid adverse inferences against parties in civil actions when they refuse to testify," Baxter v. Palmigiano, 425 U.S. 308, 318, 96 S.Ct. 1551, 1558, 47 L.Ed.2d 810 (1976), see FDIC v. Elio, 39 F.3d 1239, 1248 (1st Cir.1994), but nor does it mandate such inferences, especially as regards topics unrelated to the issues they refused to testify about. Cf. Serafino v. Hasbro, Inc., 82 F.3d 515, 518 (1st Cir.1996) (noting that "assertion of the privilege may sometimes disadvantage a party" (emphasis added)). Indeed, to hold otherwise would seem to go against the premise that the Fifth Amendment " 'guarantees ... the right of a person to remain silent ... and to suffer no penalty ... for such silence.' " Id. at 517 (quoting Spevack v. Klein, 385 U.S. 511, 514, 87 S.Ct. 625, 628, 17 L.Ed.2d 574 (1967) (emphasis added)). Therefore, we do not find that the district court misapplied Baxter v. Palmigiano.
 
 B. Discovery
 
 34
 The Muleros next contend that the district court abused its discretion in refusing the parties' joint motion to extend discovery.[2] See Ayala-Gerena, 95 F.3d at 91 (noting that we review district court's pre-trial discovery order for abuse of discretion). They argue that protracted discovery disputes, interruptions in the discovery process, and an early cutoff date[3] made the requested four-month extension essential. The result, they continue, was a prejudicial impact on their ability to contest the testimonial evidence presented in the summary judgment motion.
 
 
 35
 However, the Muleros did not seek reconsideration of the district court's denial of the parties' stipulation for the extension of the discovery period. Nor did the appellants mention the need for further discovery in their part of the Proposed Pretrial Order; indeed, they cited the fact that "discovery [had] long since closed" in arguing that the defendants' summary judgment motion was untimely and contravened Local Rule 312. Plaintiffs' Proposed Pretrial Order, at 23. Further, the Muleros' Opposition to Defendants' Motion for Summary Judgment and their Surreply in Further Opposition to Motion for Summary Judgment are both silent as to the district court denial of additional time for discovery, as well as to any need for additional discovery. Finally, the Muleros did not file a Rule 56(f) motion requesting additional discovery in order to oppose the Motion for Summary Judgment. In these circumstances, the Muleros have well and fully waived their right to argue this issue on appeal. See Correa v. Hospital San Francisco, 69 F.3d 1184, 1195 (1st Cir.1995) (noting that failure to raise an issue in the final pretrial order generally constitutes waiver), cert. denied, --- U.S. ----, 116 S.Ct. 1423, 134 L.Ed.2d 547 (1996); Beaulieu v. IRS, 865 F.2d 1351, 1352 (1st Cir.1989) ("[I]t is a party's first obligation to seek any relief that might fairly have been thought available in the district court before seeking it on appeal.").
 
 C. The Supplemental Claims
 
 36
 Finally, the Muleros argue that the district court erred in entering a judgment on the merits on the Muleros' supplemental Puerto Rico law claims. They argue that the summary judgment motion focused solely on the Title VII and ADEA claims, such that the Puerto Rico law claims were not even the subject of the motion. Accordingly, they posit, when it dismissed the Muleros' federal law claims, the district court should have dismissed the supplemental Puerto Rico law claims without prejudice to their being refiled in a court of competent jurisdiction.
 
 
 37
 The defendants contend that the issue has not been properly raised before this court, as the Muleros failed to designate the dismissal of the supplemental claims as an issue on appeal, and so the appeal should be deemed waived. See Fed. R.App. P. 10(b)(3). Specifically, the Muleros' first stated issue was that the court below erred in granting the motion for summary judgment and dismissing the action "as there existed genuine issues of material fact requiring trial." Appellants' Brief, at 1. The second stated issue regarded the discovery continuance. We agree with the defendants that the issues as presented do not encompass the question whether the Puerto Rico law claims should have been dismissed.
 
 
 38
 Moreover, even if the Muleros' statement of issues encompassed the question now raised, it would still have been deemed waived. The defendants' Motion for Summary Judgment specifically requests summary judgment as regards both the federal and state law claims, as did their Reply to the plaintiffs' Opposition, such that the district court did have the Puerto Rico law claims in front of it. The Muleros' Opposition and Surreply, however, remained silent as to the Puerto Rico law claims: they argued neither that the Puerto Rico law claims should be dismissed without prejudice, as they do now, nor that the court should exercise its supplemental jurisdiction over these claims. Nor did they file a motion for reconsideration. In these circumstances, we find that the Muleros have indeed waived this argument. See McCoy v. Massachusetts Institute of Technology, 950 F.2d 13, 22 (1st Cir.1991), cert. denied, 504 U.S. 910, 112 S.Ct. 1939, 118 L.Ed.2d 545 (1992).
 
 CONCLUSION
 
 39
 For the reasons presented above, the district court's denial of the joint motion to extend discovery is affirmed. The opinion of the district court granting summary judgment is reversed as to the Title VII and ADEA claims, and affirmed as to the pendent Puerto Rico Law claims. We remand this case to the district court for proceedings consistent with this decision.
 
 
 
 [1]
 We note that the district court's recognition that Mulero had been promoted over a 29-year period in which defendants undoubtedly knew of his Puerto Rican origin is not conclusive. As the district court found, only in late 1991 did Ponte, an acknowledged decision maker, begin to work at the company. A jury could infer from this and the policy changes she instituted that Ponte was a "new broom" and wanted to "sweep clean" according to her own prejudices, which had heretofore been ignored
 
 
 [2]
 The Muleros do not seem to address their argument to either of the Magistrate Judge's two orders regarding discovery deadlines. Nonetheless, we note that, although they filed a motion seeking clarification of one aspect of the second magistrate's order (which was denied), they did not in fact file an objection to either order regarding the discovery deadline, and so any argument regarding the Magistrate Judge's order has been waived. See Fed.R.Civ.P. 72(a) (party must object to magistrate judge's order within ten days); Pagano v. Frank, 983 F.2d 343, 345-46 (1st Cir.1993)
 
 
 [3]
 The discovery cutoff date was set for September 12, 1994, seven months after the defendants answered the complaint on February 11, 1994