164 F.3d 1186
 78 Fair Empl.Prac.Cas. (BNA) 1505,
74 Empl. Prac. Dec. P 45,662, 131 Ed. Law Rep. 916,
99 Cal. Daily Op. Serv. 9314,
1999 Daily Journal D.A.R. 1147,
98 Daily Journal D.A.R. 13,007
 Maivan LAM, Plaintiff-Appellant,
v.
UNIVERSITY OF HAWAII; Kenneth P. Mortimer, in his capacity
as President of the University of Hawaii; Lawrence C.
Foster, in his capacity as Dean of the Richardson School of
Law, Defendants-Appellees.
 No. 97-15966.
 United States Court of Appeals,
Ninth Circuit.
 Argued and Submitted Nov. 3, 1998.
Decided Dec. 24, 1998.
As Amended on Denial of Rehearing Feb. 2, 1999.
 
 Stanford H. Masui, Takahashi, Masui & Vasconcellos, Honolulu, Hawaii, for the plaintiff-appellant.
 Gary Hynds, Deputy Attorney General, Honolulu, Hawaii, for the defendants-appellees.
 Appeal from the United States District Court for the District of Hawaii; Manuel L. Real, Chief Judge, Presiding. D.C. No. CV-89-00378-MLR.
 Before: GOODWIN, WIGGINS and T.G. NELSON, Circuit Judges.
 GOODWIN, Circuit Judge:
 
 
 1
 In this second appeal of an employment discrimination case, after a remand, we are largely controlled by the law of the case. The facts are set out at some length in Lam v. University of Hawaii, 40 F.3d 1551 (9th Cir.1994). The first appeal affirmed the district court's summary judgment with respect to claims arising out of a second faculty search by the University of Hawai'i law school, but remanded the cause for further proceedings with respect to the first faculty search that was challenged by the plaintiff as in violation of "Title VII" and other anti discrimination legislation. A new trial judge granted the University's motion for a judgment as a matter of law, concluding that no triable question of fact remained after the court excluded certain testimony. This appeal challenges the second judgment. We have jurisdiction, and pursuant to the law of the case established in the first appeal, we again reverse and remand for further proceedings.
 
 
 2
 The principal issue in this appeal is whether the testimony of Professor Kastely was correctly excluded. As the University and the trial court viewed it, even if her testimony were admissible it could not constitute substantial evidence to defeat a judgment as a matter of law because it merely recounted "isolated comments [of discriminatory nature]" which were not "contemporaneous with the discharge or causally related to the discharge decision making process." See Kennedy v. Schoenberg, Fisher & Newman, Ltd., 140 F.3d 716, 723-25 (7th Cir.1998) (pregnancy discrimination); Geier v. Medtronic, Inc., 99 F.3d 238, 242 (7th Cir.1996) (same).[1]
 
 
 3
 That exclusion of testimony is difficult to reconcile with our previous holding. See Lam, 40 F.3d at 1562. In rejecting a similar argument advanced by the University in opposition to Professor Craven's testimony, we concluded that the testimony, concerning the alleged biased behavior of Professor A., was not "too remote in time or too attenuated from [the] situation" to help defeat summary judgment because Craven testified to a consistent pattern of A.'s behavior, with one manifestation of his alleged discriminatory attitude having occurred only a few months before the directorship search. Id. at 1562-63 (citing Garvey v. Dickinson College, 763 F.Supp. 799 (M.D.Pa.1991)). In Garvey, the court expressly held that in an employment discrimination case, evidence that "the defendant has made disparaging remarks about the class of persons to which plaintiff belongs, may be introduced to show that the defendant harbors prejudice toward that group. Such evidence is often the only proof of defendant's state of mind, and if it were excluded, plaintiff would have no means of proving that the defendant acted with discriminatory intent." 763 F.Supp. at 801 (citing United States Postal Service Board of Governors v. Aikens, 460 U.S. 711, 716, 103 S.Ct. 1478, 75 L.Ed.2d 403 (1983)). Thus, a series of alleged biased comments or actions could serve as sufficient evidence if they showed a pattern of behavior indicative of a defendant's discriminatory state of mind.[2]
 
 
 4
 Further, our previous opinion did not limit consideration to comments made during the final stages of the hiring process. The case advanced the proposition that "discrimination at any stage of the academic hiring or promotion process may infect the ultimate employment decision.... [A] plaintiff in a university discrimination case, need not prove intentional discrimination at every stage of the decisionmaking process; impermissible bias at any point may be sufficient to sustain liability." Id. at 1560-61 (citing Roebuck v. Drexel Univ., 852 F.2d 715, 727 (3d Cir.1988)). Admitting evidence concerning events that transpired at any stage is permissible, if that evidence tends to show that those events had an effect on the hiring committee in its final decision. In Roebuck, the court held that, in a failure-to-grant-tenure case, even though each successive evaluator of a professor's candidacy performed a de novo review, it was permissible for the jury to consider and conclude that an evaluation based on discrimination made early in the process infected the ultimate decision, because that evaluation was available to future evaluators and possibly influenced the decisionmaking process. Id. at 727.
 
 
 5
 Lam argues that this court should recognize (i) that Kastely's observations demonstrate a pattern of behavior indicative of several male faculty members' discriminatory state of mind, and (ii) that those faculty members, who were involved throughout the selection process, could have improperly influenced the ultimate employment decision.
 
 
 6
 Professor Kastely's testimony could be relevant to establish such a pattern of behavior. Kastely's most prominent observations are as follows: (1)(a) Professor B.'s "emphatic" remark that "we will not hire a black woman for this job [as Associate Dean]," (b) his advice that Kastely was "too aggressive" and "too emotional" along with other "commonly-gendered statements," and (c) his warning that Kastely's or other junior faculty's discussion of issues of race and gender might jeopardize their continuing relationships at the Law School; (2) Professors C.'s and D.'s comments regarding how the Law School would have difficulty recruiting good students if incoming classes continued to contain more than 50% women and the subsequent drop of women in the next incoming class of well below 50%; and (3)(a) Dean E.'s request that Professors Matsuda and Kastely, the only women on the faculty at the time, bring food for a gathering (an honor by traditional Polynesian standards, but perhaps of dubious political rectitude in today's academic world), (b) his decision not to enforce University and law school policy to investigate and discipline, if necessary, a law librarian who several students and staff complained had sexually harassed them, and (c) his assertion that sexual harassment rules wrongly interfered with "natural" interactions between men and women that should always involve flirtation and the like.
 
 
 7
 In support of the contention that those faculty members had improperly influenced the final decision, Lam can only point to the fact that several faculty members implicated in Kastely's testimony (i.e., Dean E., Professors A., B., C. and D. and others) were involved throughout the selection process, including the finalist stage and the final vote. While Lam's argument (i.e., that the mere presence of allegedly biased faculty members on a hiring committee is enough to establish improper influence) will not, of itself, carry a case to the jury, it should alert the trial court to the existence of triable issues of fact. See Lam, 40 F.3d at 1559 ("[t]o survive an employer's summary judgment motion, only a genuine factual issue with regard to discriminatory intent need be shown, a requirement that is almost always satisfied when the plaintiff's evidence, 'direct or circumstantial, consists of more than the McDonnell Douglas presumption' ") (quoting Sischo-Nownejad v. Merced Community College Dist., 934 F.2d 1104, 1111 (9th Cir.1991)).
 
 
 8
 In light of our previous holding, we have little choice but to remand this case once again for further proceedings in the trial court. We express no opinion on the weight and value of the proffered evidence.
 
 
 9
 Reversed and remanded.
 
 
 
 [1]
 These cases to which the University cites involve summary judgment challenges
 
 
 [2]
 The only limitation imposed by the Garvey court was that the comments or events involve persons from the plaintiff's academic department