**Maribel ALVAREZ CABRERA, Plaintiff,**

v.

**TRATAROS CONSTRUCTION INC., Defendant.**

No. CIV. 99–1077(JAG).

United States District Court, D. Puerto Rico.

Jan. 31, 2002.

Pablo Landrau-Pirazzi, Hato Rey, PR, for plaintiff.

Jose L. Gandara, Bauza & Davila, San Juan, PR, for defendants.

## OPINION AND ORDER

GARCIA GREGORY, District Judge.

Plaintiff Maribel Alvarez ("Alvarez") brought suit against defendant Trataros Construction ("Trataros") pursuant to Title VII of the 1964 Civil Rights Act (42 U.S.C. § 2000e et seq.). Trataros has moved for summary judgment, contending that Alvarez cannot prevail as a matter of law. Upon review of the record the Court grants the motion.

## FACTUAL BACKGROUND

In January 1997, Trataros hired Alvarez, through Julio Cruet ("Cruet") to work in the construction of a Fire Department building in Florida, Puerto Rico ("Florida Project"). (Plaintiff's Memorandum in Support of its Opposition to Defendant's Motion for Summary Judgment at 5). After the completion of the Florida project in August 1997, Alvarez worked at another Trataros' project in Bayamón, Puerto Rico. Id. After two or three months in the Bayamon project, her then supervisor, Joe Rivera ("Rivera"), took Alvarez to work with him at Rivera's brother's construction company. Id.

In June 1997, the U.S. Navy awarded Trataros a project in the Roosevelt Roads Naval Base ("Navy Project"). (Affidavit by John Bellucci ("Bellucci"), Vice President of Trataros in charge of the Navy Project). Bellucci, employed Rio De la Bastide ("De la Bastide") as Project Manager in June 1997, Angel Carrillo ("Carillo") as Assistant Project Manager in September 1997 and Alvarez as Quality Control Manager in December 1997. Id. The Navy Project was an indefinite contract under which the Navy had the option to renew the contract on a yearly basis. Id. The Navy's decision to renew the contract was based on Trataros performance, the Navy's needs and its budget. (Affidavit by Geore Curis, Treasurer of Trataros). Trataros anticipated a substantial number of work orders and a contract renewal. Id. Nevertheless, the Navy issued its last work order on September 30, 1997 and terminated Trataros contract in June 1998. Id. The Navy Project was terminated because of lack of work and the Navy's dissatisfaction with Trataros' performance. Id.

On numerous occasions the Navy advised Trataros that it was displeased with Trataros' management of the project. (Affidavit of Costas Trataros, President of Trataros, Inc.). On December 10, 1997, the Navy held a meeting with Trataros in which, once again, it expressed its dissatisfaction with Trataros management team. The Navy warned Trataros that it would not renew its contract on June 1998 and that Trataros would receive a final unsatisfactory rating if Trataros did not improve its performance. Id.

The last week of December 1997, Alvarez discovered that she was pregnant. (Plaintiff's Memorandum in Support of its Opposition to Defendant's Motion for Summary Judgment at 11). In early January, Alvarez told De la Bastide and Carrillo about her pregnancy. Id. On December 16, 1997, the Navy had given another "unsatisfactory" appraisal of the team's performance including criticisms on the quali-

ty aspects of the work at the Navy Project which fell under Alvarez responsibility. (Defendant's Motion for Summary Judgment, Exhibit 7). On January 14, 1998, Alvarez had abortion symptoms. (Plaintiff's Memorandum in Support of its Opposition to Defendant's Motion for Summary Judgment at 11). The next day, De la Bastide and Carrillo informed Bellucci of Alvarez near abortion. *Id.* Bellucci granted Alvarez two days to recover from the abortion symptoms. In February 1998, Trataros replaced De la Bastide and appointed Cruet as Project Manager to address the Navy's dissatisfaction and avoid a final unsatisfactory evaluation. (Affidavit by Geore Curis). The Navy Project was then divided as follows: Cruet, in charge of the Project, De la Bastide, Assistant Project Manager, and Carrillo and Alvarez, in charge of supervising the project sites and performing administrative work.

Still, the Navy expressed dissatisfaction with the team's performance and took the decision not to have Trataros perform any additional work. *Id.* On February 25, 1998, Trataros discharged Bellucci and Alvarez from employment. (Plaintiff's Memorandum in Support of its Opposition to Defendant's Motion for Summary Judgment at 11). On March 22, 1998 and April 3, 1998 Carrillo and De la Bastide were respectively fired. *Id.* Thus, Trataros dismissed the Navy Project's entire management team.

In March 1998, Trataros appointed Arthur Granfar ("Granfar") as Project Manager, Cruet as Quality Control Manager and Ivan Echevarria as project superintendent. *Id.* The Navy expressed satisfaction with the new team's work and withdrew its unsatisfactory performance rating of Trataros. *Id.* Nevertheless, these changes did not result in the Navy issuing any further task orders to Trataros. *Id.*

On January 26, 1999, Alvarez brought suit alleging that she was dismissed because of her pregnancy and that her termination amounted to sex discrimination.

## DISCUSSION

### A) The Standard for Summary Judgment

In the context of summary judgment, plaintiff must show evidence sufficient for a fact-finder to reasonably conclude that defendant's decision to terminate plaintiff's employment was driven by a discriminatory animus. *See LeBlanc v. Great American Ins. Co.,* 6 F.3d 836, 841 (1st Cir.1993). Plaintiff must also show that there is a genuine issue of material fact. *See Anderson v. Liberty Lobby Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). "[A] material fact is 'genuine' . . . if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *See Anderson,* 477 U.S. at 248, 106 S.Ct. 2505. The party moving for summary judgment bears the burden of showing the absence of a genuine issue of material fact. *See Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). To make this assessment in a given case, the Court "must view the entire record in the light most hospitable to the party opposing summary judgment, indulging all reasonable inferences in that party's favor." *See Griggs–Ryan v. Smith,* 904 F.2d 112, 115 (1st Cir.1990). When carrying out that task, the Court may safely ignore "conclusory allegations, improbable inferences, and unsupported speculation." *See Medina–Muñoz v. R.J. Reynolds Tobacco Co.,* 896 F.2d 5, 8 (1st Cir.1990). The issue before the court is "not whether [it] thinks the evidence unmistakably favors one side or the other but whether a fair-minded jury could return a verdict for the plaintiff on the evidence presented." *See Anderson,* 477 U.S. at

252, 106 S.Ct. 2505. *See also Lipsett,* 864 F.2d at 895 (1st Cir.1988).

In this case, Trataros provided ample proof of its legitimate nondiscriminatory reason for its conduct. Alvarez "must do more than simply show that there is some metaphysical doubt as to the material facts," to persuade the Court that Trataros' nondiscriminatory reason was pretextual, and that its true motive was discrimination based on sex. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). *See also Ruiz v. Posadas de San Juan Associates,* 124 F.3d 243, 248 (1st Cir.1997). Thus, to preclude summary judgment Alvarez has to proffer sufficient evidence to support two separate findings: that Trataros's reason was pretextual and that its true motive was discrimination on the basis of sex. *See St. Mary's Honor Ctr. v. Hicks,* 509 U.S. 502, 509, 113 S.Ct. 2742, 125 L.Ed.2d 407 (1993). *See also Thomas v. Eastman Kodak Co.,* 183 F.3d 38, 56 (1st Cir.1999).

### B) Title VII Claim

Title VII makes it an unlawful employment practice for an employer to discriminate against any individual based on sex. *See* 42 U.S.C. § 2000e–2(a)(1).

Under Title VII a discrimination case can be established in either of two ways: first, through direct evidence of discrimination or, second, through the cumulative effect of indirect evidence of the employer's motivation. *See Lipsett v. Univ. of Puerto Rico,* 864 F.2d 881, 909 (1st Cir. 1988). In this case, Alvarez did not proffer direct evidence of discrimination by Trataros on account of her gender. Absent direct evidence of intentional discrimination, a Title VII plaintiff alleging disparate treatment must employ the burden-shifting-framework enunciated in *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). *See also Texas Department of Community Affairs v. Burdine,* 450 U.S. 248, 252–53, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981); *Mulero–Rodriguez v. Ponte, Inc.,* 98 F.3d 670, 673 (1st Cir.1996).

Under *McDonnell Douglas,* Alvarez bears the initial burden of establishing a *prima facie* case of Title VII discrimination. *See McDonnell Douglas Corp.* 411 U.S. at 802, 93 S.Ct. 1817. The specifications of the *prima facie* proof vary depending on the nature of the discrimination claim. *See Id.* at n. 13, 93 S.Ct. 1817. In general, an employee alleging gender discrimination must first establish a *prima facie* case by showing that: (1) she belonged to a protected class, (2) she performed her job satisfactorily, (3) her employer took an adverse employment decision against her, and (4) her employer continued to have her duties performed by a comparably qualified person. *See Santiago–Ramos v. Centennial P.R. Wireless Corp.,* 217 F.3d 46, 54 (1st Cir.2000); *LeBlanc v. Great Ins. Co.,* 6 F.3d 836, 841 (1st Cir.1993).

### C) The *Prima Facie* Case

Alvarez is a woman and, therefore, a member of a class protected by Title VII. It is undisputed that Trataros discharged Alvarez. With respect to the fourth prong of the *McDonnell Douglas* test's threshold, a complainant can satisfy it by simply showing that the employer had a continued need for "someone to perform the same work after [the complainant] left." *See Lipsett,* 864 F.2d at 899, *Cumpiano v. Banco Santander Puerto Rico,* 902 F.2d 148, 155 (1st Cir.1990). Here, Cruet was assigned to perform Alvarez duties as Quality Control Manager a month after Alvarez was fired. (Affidavit by Granfar).

■ With respect to the second prong of the *McDonnell Douglas* test's threshold,

Alvarez alleges that she was performing adequately at Trataros, as Quality Control Manager. (Plaintiff's Memorandum in Support of its Opposition to Defendant's Motion for Summary Judgment 5). Alvarez supports her argument by claiming that Trataros' discharge letter did not state that she was dismissed because of her inadequate performance. To the contrary, the letter stated that Trataros hoped to count with her services in the future. *Id.* at 7. Trataros does not contend that Alvarez was an inept employee, its position is simply that Alvarez, like the rest of the management team, was not adequately performing her job at the Navy Project and had to be replaced to avoid a final negative evaluation from the Navy. (Reply to Plaintiff's Opposition to Motion for Summary Judgment at 5 note 2).

Alvarez also avers that the Navy complaints were limited to Trataros' compliance with the work timetable, and that the Navy never complained about quality, which was her province. (Plaintiff's Memorandum in Support of its Opposition to Defendant's Motion for Summary Judgment at 6, 10–11). This statement, however, is incorrect. On December 16, 1997, the Navy issued a letter specifically complaining about Quality Control issues. Of eight Quality Control categories that were evaluated by the Navy, Trataros received an unsatisfactory rating on four: (1) Quality of Workmanship; (2) Implementation of the CQC Plan; (3) Quality of QC Documentation; and (4) Adequacy of Submittals. (Motion for Summary Judgment, Exhibit 7.) Alvarez further claims that she was competent because the Navy never mentioned her in its complaints. (Plaintiff's Memorandum in Support of its Opposition to Defendant's Motion for Summary Judgment at 6). The Navy's failure to mention Alvarez is immaterial because Alvarez admits in her résumé that she was the Quality Manager for the Navy Project

responsible for the project's inspection and for making sure that "the job is done according to specifications." (Motion for Summary Judgment, Exhibit 11).

According to Alvarez, Bellucci hired her as Quality Control Manager at the Navy Project because he was familiar with her previous performance in other Trataros' projects. (Plaintiff's Memorandum in Support of its Opposition to Defendant's Motion for Summary Judgment at 5). Alvarez avers that while working at the Navy Project she was also commissioned to oversee jobs outside the Navy Project. *Id.* at 6. Alvarez also avers that Carrillo told her that Bellucci told him that he was satisfied with her performance. *Id.* The probative value of these remarks is minimal because Bellucci was also terminated by Trataros on the same day and for the same reasons as Alvarez. Thus, Bellucci's evaluation of Alvarez performance at the Navy Project cannot be considered representative of that of Trataros.

A similar position was taken by De la Bastide and Carrillo who told Alvarez that her performance had been excellent. (Plaintiff's Memorandum in Support of its Opposition to Defendant's Motion for Summary Judgment at 5, 13). These two employees, however, were also subsequently fired for the same reasons, hence their evaluation of Alvarez performance at the Navy Project cannot be considered representative of that of Trataros.

At this initial stage Alvarez burden is minimal. *See Oliver v. Digital Equip. Corp.,* 846 F.2d 103, 108 (1st Cir.1988); *Cumpiano,* 902 F.2d at 148. The evidence Alvarez has proffered, however, leaves the Court skeptical as to whether she performed her job satisfactorily at the Navy Project. The *prima facie* case and the employer's nondiscriminatory reason are "irretrievably intertwined" where the em-

ployer asserts that it discharged the plaintiff because her job performance was not satisfactory. *Id.* Accordingly, we will examine Trataros' nondiscriminatory reason for firing Alvarez. *See Lawrence v. Northrop Corp.,* 980 F.2d 66, 69 (1st Cir.1992). Trataros' obligation is simply one of production. *See Id.*

## D) Trataros' Legitimate Non–Discriminatory Reason

■ Trataros has not only stated its legitimate nondiscriminatory reasons for its personnel decision but has also presented substantial affirmative proof of those reasons. Trataros asserts that the reason behind its adverse employment decision responded exclusively to the Navy's dissatisfaction with Trataros' management of the Navy Project and the Navy's reluctance to grant Trataros more work tasks. (Affidavits by Trataros, Curis and Bellucci). This is very serious because a final unsatisfactory rating on a public improvement contract results in a contractor being barred from bidding on contracts for a number of years. *Id.* Trataros discharged those employees who were most directly involved with the management of the project, Bellucci, De la Bastide, Carrillo and Alvarez to avoid a final unsatisfactory rating. *Id.* Alvarez does not dispute that she and the other Trataros on-site managers worked "as a team" in the Navy Project. (Reply to plaintiff's opposition to motion for summary judgment, Exhibit 1 at 28, lines 14–20).

Once the employer has proffered a legitimate, nondiscriminatory reason for its adverse decision, the presumption generated by the employee's *prima facie* case disappears, and the burden falls back upon the employee to prove that the reason advanced by the employer for the adverse action constituted a mere pretext for unlawful sex discrimination. *See Lawrence v. Northrop Corp.,* 980 F.2d 66, 69–70 (1st Cir.1992). *See also Mesnick v. General Elec. Co.,* 950 F.2d 816, 824–826 (1st Cir. 1991). Minimally sufficient evidence of pretext would not suffice; evidence that reasonably supports a finding of discriminatory animus is required. *See Goldman v. First Nat. Bank of Boston,* 985 F.2d 1113, 1116–1118 (1st Cir.1993).

## E) The Pretext for Discrimination

■ Alvarez argues that certain discriminatory comments made by Cruet in the context of the prior unrelated Florida Project where she initially worked for Trataros, constitute direct evidence of discrimination. Cruet, Alvarez's supervisor in the Florida Project, allegedly told a foreman from that project, that he would never hire again a female engineer, especially if she had children, because he was displeased that Alvarez did not show up for work because she had to take care of her daughters. (Plaintiff's Deposition at 103).

It is well settled that direct evidence of discrimination does not include stray remarks by non-decisionmakers or decisionmakers unrelated to the decisional process itself. *See Ayala–Gerena v. Bristol Myers–Squibb Co.,* 95 F.3d 86, 96 (1st Cir.1996); *Vazquez Gonzalez v. K-Mart Corp.,* 940 F.Supp. 429, 435 (D.Puerto Rico 1996). In this case, direct evidence of employment discrimination based on gender would be "an admission by the employer that it explicitly took actual or anticipated pregnancy into account in reaching an employment decision". *See Smith v. F.W. Morse & Co., Inc.,* 76 F.3d 413, 421 (1st Cir.1996).

Here, Cruet's isolated comment in the context of the prior Florida Project cannot constitute direct evidence of pregnancy discrimination because it was not "contemporaneous with the discharge or causally related to the discharge decision making

process." *See Geier v. Medtronic, Inc.,* 99 F.3d 238, 242 (7th Cir.1996); *Oest v. Illinois Dept. of Corrections,* 240 F.3d 605, 611 (7th Cir.2001); *Lam v. University of Hawaii,* 164 F.3d 1186, 1187,(9th Cir. 1998); *Wohler v. Toledo Stamping & Mfg. Co.,* 1997 WL 603422, 125 F.3d 856, 856 (6th Cir.1997). Although Cruet's alleged comment appears to be offensive, it lacks both a temporal relationship to and a causal nexus with the decision to discharge Alvarez because it was made six months prior to her discharge and in a setting unrelated to discussions of Alvarez work performance in the Navy Project, which ultimately led to her dismissal. *Id.* Alvarez has not only failed to show that Cruet participated in the decision to terminate her employment but she has also failed to proffer any evidence for a reasonable jury to conclude that Cruet was in a position to influence Trataros' decision to fire her. *See Mulero–Rodriguez v. Ponte, Inc.,* 98 F.3d 670, 676 (1st Cir.1996).

Alvarez also claims that after Bellucci found out about her pregnancy he acted somber and indifferent towards her. (Plaintiff's Memorandum in Support of its Opposition to Defendant's Motion for Summary Judgment at 11). Alvarez, however, does not offer any evidence that would establish a causal nexus between Bellucci's somber attitude and her pregnancy as the possible cause of her discharge. In fact, Alvarez admits that her pregnancy may not have been the cause of Bellucci's attitude. (Reply to plaintiff's opposition to motion for summary judgment, Exhibit 4 at 67, lines 9–16).

Alvarez further avers that Cruet, Carrillo and De la Bastide remained silent when she confronted them with the proposition that her dismissal was due to her pregnancy. (Plaintiff's Memorandum in Support of its Opposition to Defendant's Motion for Summary Judgment at 11). Alvarez suggests that their silence constitutes an admission of discriminatory animus by Trataros pursuant to Fed.R.Evid. 801(d)(2)(B). *Id.* at 12–13. The Court disagrees. Alvarez does not allege that her co-workers were authorized to speak for Trataros on this issue, and there is nothing in the record to suggest that they influenced or even had any knowledge of the decision making process. *See Mulero–Rodriguez,* 98 F.3d at 676.

Alvarez also alleges that Trataros discriminated against her when it reassigned her to perform only administrative tasks because of the presence of lead inside the buildings of the Navy Project. (Plaintiff's Memorandum in Support of its Opposition to Defendant's Motion for Summary Judgment at 11). Alvarez, however, admits that her duties on the project, like the duties of the other members of the management team, included both work in the field and in the office. (Reply to plaintiff's opposition to motion for summary judgment, Exhibit 8 at 37, lines 6–10).

Trataros disputes Alvarez's allegation and claims that it has a history of not discriminating against Alvarez because of her pregnancies, and that it has been the company's policy to reasonably accommodate her or any other pregnant employee when necessary. (Motion for Summary Judgment, Exhibit 13). In fact, Trataros became aware that Alvarez had two children when it hired her for the Navy Project. (Reply to plaintiff's opposition to motion for summary judgment, Exhibit 15 at 22, lines 13–18). In August 1997, Trataros gave Alvarez several days off because she had aborted another pregnancy unrelated to the instant action. (Reply to plaintiff's opposition to motion for summary judgment, Exhibit 16 at 78, lines 19–22). (Paragraph 16 of Complaint). In January 1998, Trataros gave Alvarez time off when she believed that she was having

trouble with the complained pregnancy. (Reply to plaintiff's opposition to motion for summary judgment, Exhibit 13 at 62–63). Trataros alleges that, in February 1998, it reassigned Alvarez because it was concerned with providing reasonable accommodation to protect her and her unborn child from the lead inside the buildings. (Reply to plaintiff's opposition to motion for summary judgment at 13).

■ Federal law does not require employers to make accommodations for its pregnant employees; "[e]mployers can treat pregnant women as badly as they treat similarly affected but nonpregnant employees." *See Troupe v. May Dept. Stores Co.*, 20 F.3d 734, 738 (7th Cir.1994). Here, Trataros went beyond its legal duty and Alvarez has not rebutted Trataros' showing that it has a history of non-discrimination with regard to her pregnancies.

■ Finally, Alvarez claims that after her dismissal from Trataros she was called by Carrillo who informed her that Granfar was allegedly going to rehire her at the Navy Project as Quality Control Manager as of March 16, 2000. (Plaintiff's Memorandum in Support of its Opposition to Defendant's Motion for Summary Judgment at 13). Shortly thereafter, Carrillo called Alvarez again to inform her that Granfar had allegedly reconsidered the offer in view of the fact that, at that time, she had not filed a Complaint against Trataros. *Id.* at 14.

This information is purely hearsay pursuant to Fed.R.Evid. 801(d)(2)(D). Alvarez admitted at her deposition, that Carrillo was not her supervisor, that he did not participate in management meetings, that he did not evaluate her nor had the authority to hire or terminate her. (Reply to plaintiff's opposition to motion for summary judgment, Exhibit 9 at 72–73). These statements, therefore, are outside the scope of Carrillo's employment, and cannot be attributed to Trataros. They are not sufficiently trustworthy and cannot be introduced as a hearsay exception under Rule 801(d)(2). See *Woodman v. Haemonetics Corp.*, 51 F.3d 1087 (1st Cir., 1995); *Precision Piping and Instruments, Inc. v. E.I. du Pont de Nemours and Co.*, 951 F.2d 613, 618 (4th Cir.1991); *Breneman v. Kennecott Corp.*, 799 F.2d 470, 473 (9th Cir.1986); *Hill v. Spiegel, Inc.*, 708 F.2d 233, 236 (6th Cir.1983). The statement, therefore, would be inadmissible at trial and hence may not be used to defeat Trataro's properly supported Motion for Summary Judgment.

Our rejection of these statements is further justified by the fact that Alvarez did not submit a supporting affidavit from Carrillo even though Alvarez testified that she had requested him to copy and deliver various documents from Trataros' files that she believed strengthened her case. (Reply to plaintiff's opposition to motion for summary judgment, Exhibit 10 at 83–84).

Federal law bars Trataros from focusing on Alvarez pregnancy, but not on her inadequate performance, including her termination unless Trataros overlooks the comparable performance of the nonpregnant members of its management team. *See Geier*, 99 F.3d at 241; *Deneen v. Northwest Airlines, Inc.*, 132 F.3d 431, 435 (8th Cir.1998). Here Trataros terminated every member of the team for one and the same reason entirely unrelated to Alvarez's pregnancy: their unsatisfactory performance in the eyes of the Navy. Without any admissible evidence that Trataros treated Alvarez differently from the rest of the team, because of her pregnancy, no inference of discriminatory intent can be imputed to Trataros. Accordingly, Alvarez has failed to raise an issue of material

fact on the issue of pretext and her discrimination claim must be dismissed.

### CONCLUSION

The Court will not sit as a "super personnel department, assessing the merits or -even the rationality of employer's non-discriminatory business decisions." *Mesnick*, 950 F.2d at 825. It's role is simply to vindicate the rights of employees who have been the target of unlawful discrimination. This is not such a case.

For the foregoing reasons, the Court **GRANTS** Trataros' Motion for Summary Judgment (Docket NO. 27). Alvarez Title VII claim is hereby **DISMISSED** with prejudice. The Court declines to exercise its supplemental jurisdiction over Alvarez's state law claims under 28 U.S.C. § 1367 and they are hereby **DISMISSED** without prejudice.

IT IS SO ORDERED.