Alan WIGOD, Plaintiff,

v.

WATER PIK TECHNOLOGIES, INC.,
a Delaware corporation,
Defendant.

No. CIV.A.01–K–2454.

United States District Court,
D. Colorado.

April 14, 2004.

John Nathaniel McNamara, Jr., McNamara Law Firm, P.C., Denver, CO, for Plaintiff.

John M. Husband, Alan David Schuchman, Holland & Hart, LLP, Denver, CO, for Defendant.

## ORDER DENYING SUMMARY JUDGMENT

KANE, Senior District Judge.

This age discrimination case is before me on Defendant's motion for summary judgment. Defendant Water Pik Technologies, Inc. ("Water Pik") argues that Plaintiff Alan Wigod ("Wigod") has not produced sufficient evidence to raise a *prima facie* case of age discrimination. Water Pik contends it fired Wigod during a reduction in force because it wanted to move its salespersons closer to key accounts and because Wigod's job performance was poor. Assuming Wigod has established a *prima facie* case, Water Pik also argues that Wigod does not produce evidence sufficient to establish that these reasons are pretextual. I disagree and DENY the motion.

## I. SUMMARY JUDGMENT STANDARD

Rule 56(c) of the Federal Rules of Civil Procedure permits entry of summary judgment where the pleadings, depositions, answers to interrogatories and admissions on file, together with any affidavits, show

there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. In reviewing the present motion, the judge should accept as true the evidence presented by Wigod as the non-movant and draw all justifiable inferences in his favor. *See Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 255, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). Summary judgment is appropriate only where the record, taken as a whole, could lead no rational trier of fact to find in Wigod's favor and would support judgment in favor of Water Pik as a matter of law. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). I may neither make credibility determinations nor weigh the evidence because those are jury functions. *See Reeves v. Sanderson Plumbing Prods., Inc.,* 530 U.S. 133, 150, 120 S.Ct. 2097, 147 L.Ed.2d 105 (2000).

## II. STATEMENT OF FACTS, CLAIMS AND DEFENSES

Defendant Water Pik fired Plaintiff Wigod on 2 June 2000. At that time, Wigod was a Fort Collins-based Regional Sales Manager and, at age 68, was the oldest member of the company's sales force and the second oldest of 1700 employees in the corporation. Wigod had worked continuously for Water Pik for over 36 years.

Wigod's recent employment history is as follows. From 1993 to January 1997, Wigod was a Regional Sales Manager, responsible for directing regional sales accounts. In January 1997, Water Pik promoted Wigod to National Account Manager where Wigod directed national accounts. In May 1998, Wigod also became a Field Sales Manager where he supervised Regional Sales Managers. He continued serving as a National Accounts Manager. In February 2000, Water Pik demoted Wigod from his Field Sales and National Account Manager positions and made him a Regional Sales Manager once again. Four months later, on 2 June 2000, Water Pik fired Wigod. Donald D'Angelo ("D'Angelo"), Wigod's direct supervisor, and Tim Laughlin ("Laughlin"), director of Water Pik's sales department, made the termination decision.

Water Pik offers three justifications for firing Wigod. First, it asserts it eliminated Wigod's position pursuant to a company-wide reduction in force ("RIF"). In its own words, the company was attempting to improve productivity, reduce expenses and develop the business. (Br. in Supp. of Def.'s Mot. for Summ. J. at 8.) Second, Water Pik maintains it wanted to move its salespersons closer to key accounts. Particularly, Water Pik wanted a Chicago-based individual to service Wigod's accounts.

Third, Water Pik contends it fired Wigod because his job performance was poor. As proof, Water Pik offers Wigod's annual performance reviews. In 1993 and 1995, Wigod, as a Regional Sales Manager, received a minus (-) rating, indicating that he did "not meet standards." In 1997, as a National Account Manager, Wigod again received a minus (-) rating. In 1998 and 1999, Wigod received a "2" rating, indicating that he "usually met objectives," but perhaps needed "close supervision or coaching to maintain performance."

Water Pik also offers sales statistics as evidence that Wigod failed to meet performance objectives. In 1998, Wigod was last of all National Account Managers, reaching only 71% of his sales goal. The average for National Account Managers for 1998 was 83%. In 1999, Wigod was the only National Account Manager to sell lower volume than in the previous year. Water Pik also points to Wigod's record as a Field Sales Manager. In 1998, the field sales force under Wigod's management achieved 69% of its goal and 75% of the

previous year's sales, while the entire sales force averaged 80% of goal and 90% for the previous year. In 1999, Wigod's field achieved 71% of goal and 77% for the previous year, while the entire retail sales force averaged 92% and 102% respectively. Water Pik also states Wigod's performance did not improve after his February 2000 demotion to Regional Sales Manager. The day the company fired Wigod, Wigod had reached 35% of his goal and 83% for the previous year, compared to the other two Regional Sales Managers who had reached 53/136% and 59/146% respectively.

In addition Water Pik points to Wigod's verbal altercations with clients and a costly auto accident as evidence of poor job performance. During a 1999 meeting with high-level executives from Rite–Aid, Wigod came to words with the buyer, and in a sales presentation to a Payless buyer, Wigod came off as too aggressive, causing the buyer to get up and leave. In 1998, Water Pik paid out $83,000 to settle claims arising from an accident in which Wigod hit another car and left the scene of the accident.

Wigod asserts that these explanations are pretext for age discrimination. As to the RIF, Wigod points out that instead of reducing the number of persons on the sales staff, the reorganization actually increased the number. Laughlin admits that he and D'Angelo were discussing the plan to hire nine new sales employees one month before they fired Wigod. (Laughlin Dep. at 35:17–36:20) (attached as Ex. 3 to Pl.'s Resp. Br.) Lori Smith, the human resources employee who was present when Wigod was fired, was shocked when she learned of this plan. (Smith Dep. at 20:12–23:9) (attached as Ex. 6 to Pl.'s Resp. Br. in Opp'n to Def.'s Mot. for Summ. J.) Indeed, ten days after Water Pik fired Wigod, D'Angelo circulated an intra-company memo seeking "individuals to fill multiple position[s] in the Sales Department." (Mem. 12 June 2000 entitled "New Hires") (attached as Ex. 8 to Pl.'s Resp. Br.)

As to Water Pik's relocation justification, Wigod points out that he was not offered the Chicago-based RSM position that was substantially similar to his own, nor was he offered the opportunity to move. Wigod testifies that no other sales managers were ever required by the company to move their residences so that they could be closer to accounts.

Finally, Wigod contends that poor performance was not the reason he was fired. On 2 June 2000, D'Angelo told Wigod the reason he was being fired was because his position was being eliminated. At that time, he mentioned nothing to Wigod about poor performance. Water Pik raised its poor performance justification after Wigod initiated his lawsuit. Wigod was never warned about performance problems, and he was never disciplined pursuant to the company's progressive discipline policy. Additionally, three of Wigod's four main sales accounts, Service Merchandise, Rite Aid, and Payless Cashways, were troublesome accounts. In January 1999, Service Merchandise owed Water Pik over $500,000 and had past due invoices of over $250,000. In that month, a Water Pik credit manager informed Service Merchandise that Water Pik would not release future orders until Service Merchandise paid for the products it had received. On 15 March 1999, involuntary Chapter 11 bankruptcy was filed against Service Merchandise. Also, on 29 July 1999, Water Pik sent a letter to Right Aid stating that $40,000 must be paid to settle several claims Water Pik had against it. Payless Cashways filed for Chapter 11 bankruptcy in 1997. D'Angelo himself received poor performance reviews when he took over these accounts after Wigod was fired. Further, Wigod points out that he

received "merit pay increases" from Water Pik through the period Water Pik contends his performance was lacking. Specifically, Wigod received increases of 1% in 1995, 5% in 1997, and 2% in 1999 and 2000. Finally, Wigod points out that he worked for Water Pik for over thirty-six years.

Wigod argues that Water Pik fired him because of his age. Although Wigod himself was involved in previous layoff decisions and does not recollect that age was a factor in those, he points out that after the RIF in which he was fired, the average age of the sales staff was significantly lower than before. Of twenty-five Water Pik employees included in the RIF, twenty were age 40 or over. After the RIF, seven new employees were added to the Water Pik sales force over a two and one-half year period. The ages of the new hires ranged from 30 to 44, the average being 35. Wigod argues that Water Pik purposely attempted to replace older employees with younger ones. In addition, Wigod's specific job duties were handed over to D'Angelo, age 49, for eight months after Wigod's termination. Those accounts were then spread out to other member of the sales staff, all whom were younger than Wigod. Also, shortly before his termination, Wigod had his prostate removed due to cancer. D'Angelo knew about the cancer and the operation. (Wigod Dep. I at 99:13–101:5) (attached as Ex. 2 to Pl.'s Resp. Br.)

## III. DISCUSSION

### A. McDonnell Douglas Test

Where no direct evidence of invidious intent exists, ADEA plaintiffs may prove age discrimination indirectly through the three-part framework applicable to Title VII discrimination claims and set out in *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973) and its progeny. *See Cone v. Longmont Hosp.,* 14 F.3d 526 (10th Cir.1994).

Under the McDonnell Douglas test, Wigod bears the burden of establishing a *prima facie* case of discrimination. Once he has done so, the burden of production shifts to Water Pik to articulate a facially nondiscriminatory reason for its decision. If Water Pik meets its burden of production, the presumptions dissolve and Wigod assumes the normal burden of any plaintiff to prove his termination was motivated by discriminatory intent. *See Reeves v. Sanderson Plumbing Products, Inc.,* 530 U.S. 133, 120 S.Ct. 2097, 147 L.Ed.2d 105 (2000); *Texas Dept. of Community Affairs v. Burdine,* 450 U.S. 248, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981); *Cone,* 14 F.3d 526.

### B. Wigod's *Prima Facie* Case

Water Pik argues that Wigod fails to establish two elements of the *prima facie* case. I disagree and rule that Wigod has presented enough evidence to establish a *prima facie* case of age discrimination.

To establish a *prima facie* case of discrimination, a plaintiff must prove: (1) that he was within the protected age group; (2) that he was doing satisfactory work; (3) that he was discharged; and (4) that his position was filled by a younger person. *McKnight v. Kimberly Clark Corp.,* 149 F.3d 1125, 1128 (10th Cir.1998). Water Pik concedes that Wigod was within the protected age group and that it discharged Wigod. Water Pik argues, however, that Wigod does not satisfy the second or fourth requirements of the *prima facie* case.

Under the second requirement, Wigod must show that he was doing satisfactory work. Water Pik insists that Wigod's work was not satisfactory. It presents his annual performance reviews and a comparison of Wigod's sales statistics with other sales managers. Water Pik also points out two instances where Wigod quarreled with clients, and that it paid out $83,000 to settle claims relating to an auto accident

where Wigod was at fault and left the scene of the accident.

■ Wigod casts sufficient doubt on Water Pik's evidence. He testifies that when D'Angelo fired him, D'Angelo mentioned nothing about poor performance. D'Angelo stated only that Wigod's position was being eliminated and that Wigod was fired. Water Pik brought up Wigod's poor performance only after Wigod initiated his suit. Wigod offers evidence that three of his four largest sales accounts, Service Merchandise, Rite Aid, and Payless Cashways, were troublesome accounts. Service Merchandise and Payless Cashways, for instance, faced Chapter 11 bankruptcy proceedings, and sales to Rite Aid were curtailed because of a disagreement between it and Water Pik. Also, D'Angelo admits that when he took over these accounts, he himself received a poor review from Laughlin for not meeting sales goals. Further, Wigod points out that he received "merit pay increases" of 5% in 1997 and 2% in 1999 and 2000. Indeed, Wigod received his last pay increase just fifty-nine days before he was fired. Lastly, Wigod points out that he worked for Water Pik for thirty-six years, receiving a number of promotions and pay raises during that time.

Drawing all reasonable inferences in Wigod's favor, there is sufficient evidence for me to conclude that Wigod was doing satisfactory work. Wigod can satisfy the satisfactory work requirement by showing such indicia as met expectations as length of service and pay raises. *See Brewer v. Quaker State Oil Ref. Corp.*, 72 F.3d 326 (3rd Cir.1995) (23 years experience and receipt of bonuses in the two years prior to discharge sufficient to establish satisfactory performance); *Mulero–Rodriguez v. Ponte, Inc.*, 98 F.3d 670 (1st Cir.1996) (29 years with same employer plus pay raises and promotions sufficient). The Supreme Court has made it abundantly clear that the McDonnell Douglas framework is not intended to be "rigid, mechanized, or ritualistic." *See Furnco Construction Corp. v. Waters*, 438 U.S. 567, 577, 98 S.Ct. 2943, 57 L.Ed.2d 957 (1978). I am persuaded that Wigod has established the second requirement of the *prima facie* case.

■ Water Pik also argues that Wigod did not satisfy the fourth requirement of the *prima facie* case. Under that requirement Wigod must establish that a younger person filled his position. Water Pik argues that Wigod's position was eliminated, and, therefore, no person replaced him. Although a Chicago-based Regional Sales Manager position was advertised ten days after Wigod's discharge, Water Pik claims this was an entirely new position and that, in any case, the position has not been filled. Water Pik relies on *Furr v. Seagate Tech., Inc.*, 82 F.3d 980, 988 (10th Cir. 1996), for the proposition that an eliminated position is no longer a distinct job after its responsibilities are absorbed by other employees after a RIF.

However, given that the Chicago-based Regional Sales Manager position advertised ten days after Wigod's termination was substantially similar to Wigod's eliminated position, that Wigod's accounts were taken over for the first eight months by one person, D'Angelo, age 49, that nine new positions in the Water Pik Sales Department were advertised shortly after Wigod's termination, and that younger persons filled most of these positions, I conclude that Wigod was "replaced" by a younger employee. For purposes of summary judgment, Wigod has satisfied the *prima facie* case.

### C. Water Pik's Legitimate, Nondiscriminatory Reasons

■ Water Pik claims three legitimate, nondiscriminatory reasons for discharging Wigod: (1) that it was undergoing a RIF;

(2) that it was moving sales managers closer to key accounts; and (3) that Wigod was not satisfactorily performing his duties as regional sales manager. By offering these legitimate reasons for firing Wigod, Water Pik meets its burden of production.

### D. Pretext

Wigod, then, is left to prove by a preponderance of the evidence that the legitimate reasons offered by Water Pik were not its true reasons, but were a pretext for age discrimination. *See Reeves, supra,* 530 U.S. at 143, 120 S.Ct. 2097 (quoting *Texas Dept. of Community Affairs v. Burdine,* 450 U.S. 248, 253, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981)). At this stage, Wigod must show that Water Pik's proffered explanations are "unworthy of credence." *See id.* Although presumption of discrimination drops out of the picture once Water Pik meets its burden of production, the trier of fact may still consider the evidence establishing Wigod's *prima facie* case, and inferences properly drawn therefrom, on the issue of whether Water Pik's explanations were pretextual. *Id.* I conclude that Wigod has presented sufficient evidence to allow a jury to find that Water Pik's proffered justifications are pretextual and that the company invidiously discriminated against him on the basis of age.

First, Water Pik offers evidence that it fired Wigod during a RIF. However, Wigod presents contrary evidence that Water Pik's sales department actually grew during the relevant time period. Laughlin admits he and D'Angelo were discussing a plan to increase the sales department one month before they fired Wigod. Lori Smith, the human resources employee who was present when Wigod was fired, was shocked when she learned of the plan. A jury could conclude that seeking applicants for nine new positions is not the action of a company trying to cut costs under a RIF. That the Regional Sales Manager West and Central positions have yet to be filled does not alter the fact that at the time Wigod was fired, Laughlin and D'Angelo planned to increase the sales department. Reasonable jurors could find that Water Pik's RIF explanation was pretextual.

Water Pik's second justification is that it eliminated Wigod's Fort Collins-based sales position because it wanted to locate sales managers closer to key accounts. In particular, the company wanted a Chicago-based individual to service Wigod's accounts. Wigod responds that Water Pik never offered him the opportunity to move to Chicago and that no sales managers were ever required by the company to move. In fact, Laughlin and D'Angelo did not consider Wigod for any of the new sales positions. (D'Angelo Dep. at 35:4–9) (attached as Ex. 7 to Pl.'s Resp. Br.) A jury could conclude that Water Pik's relocation justification is also pretextual.

Finally, Water Pik offers Wigod's poor performance as a legitimate, nondiscriminatory reason for firing him. The same discussion regarding Wigod's job performance applies here. Although Wigod admits his performance between 1997–2000 could have been better (*See* Wigod Dep. II at 279:17–282:18, 298:3–5) (attached as Ex. B to Br. In Supp. of Def.'s Mot. for Summ. J.), his performance reviews appear inconclusive. Also, by introducing evidence that he handled difficult accounts, Wigod casts doubt on whether he was responsible for his poor sales statistics. Together with Wigod's evidence of merit pay increases, Wigod's testimony that D'Angelo never mentioned anything about poor performance when he fired him, and that Laughlin gave D'Angelo himself poor reviews when he handled the same accounts after Wigod's termination, a jury could conclude

that Water Pik's poor performance justification was pretextual.

It is true that when reviewing whether an employer's reasons were pretextual, a court does not "sit as a super-personnel department that second-guesses" an employer's business decisions with the benefit of twenty-twenty hindsight. *See Tyler v. RE/MAX Mountain States, Inc.*, 232 F.3d 808, 813–14 (10th Cir.2000). However, "evidence indicating that an employer misjudged an employee's performance or qualifications is, of course, relevant to the question whether its stated reason is a pretext masking prohibited discrimination." *Id.* at 814 (internal quotations omitted). Based on the evidence, a jury could conclude that Wigod's alleged poor performance was a pretext for age discrimination.

Proof that Water Pik's explanations are unworthy of credence is simply one form of circumstantial evidence that is probative of intentional discrimination, and it may be quite persuasive. *See Reeves*, 530 U.S. at 143, 120 S.Ct. 2097. In appropriate circumstances, the trier of fact can reasonably infer from the falsity of the explanation that the employer is attempting to cover up a discriminatory purpose. Thus, Wigod's *prima facie* case, combined with evidence tending to show that the employer's asserted justifications are false, may permit the trier of fact to conclude that the employer unlawfully discriminated on the basis of age. If Water Pik's justifications are eliminated, discrimination may well be the most likely alternative explanation, especially as the employer is in the best position to put forth the actual reason for its decision. Thus, Wigod's prima facie case, combined with sufficient evidence to support an inference of pretext, permits the trier of fact to conclude that the employer unlawfully discriminated. *See id.* at 147–48, 120 S.Ct. 2097.

Although a plaintiff need not introduce additional, independent evidence of discrimination, Wigod has done so. The average age of the sales staff after the RIF was significantly lower than the average age before the RIF. From this evidence a jury could infer an overall effort by Laughlin and D'Angelo to replace older employees with younger ones. Because Wigod has produced enough evidence for reasonable jurors to decide in his favor, I DENY Water Pik's motion for summary judgment.